KATE GUTHEIL, Administratrix of the Estate of Moroni R. Williams, Deceased, Appellant, v. J. T. GILMER, MONROE SALISBURY and O. J. SALISBURY, Partners Under the Firm Name and Style of GILMER, SALISBURY & COMPANY, Respondents.

NON-TRADING PARTNERSHIP—NO ASSUMPTION OF BUSINESS OUTSIDE GENERAL SCOPE—MATTER NOT WITHIN SCOPE OF PARTNERSHIP BUSINESS—DEALINGS WITH INDIVIDUAL MEMBER—BY THIRD PARTY—AT HIS PERIL—ABSENCE OF RATIFICATION—NO LIABILITY—EVIDENCE—INSUFFICIENT TO PROVE RATIFICATION—OF UNAUTHORIZED ACT OF MEMBER OF NON-TRADING PARTNERSHIP—PARTNER—IN NON-TRADING PARTNERSHIP—PRIMA FACIE NO AUTHORITY TO BIND HIS PARTNERS OUTSIDE SCOPE OF BUSINESS—BURDEN OF PROOF.

1. NON-TRADING PARTNERSHIP: NO ASSUMPTION OF BUSINESS OUTSIDE GENERAL SCOPE. In the absence of affirmative proof, it can not be assumed that mining or dealing in mines, is within the scope of the business of a non-trading partnership, engaged primarily in the business of running stages, carrying United States mails and transporting express matter and passengers.

2. MATTERS NOT WITHIN SCOPE OF PARTNERSHIP BUSINESS: DEALINGS
   WITH INDIVIDUAL MEMBER: BY THIRD PARTY: AT HIS PERIL: ABSENCE
   OF RATIFICATION: NO LIABILITY. One dealing with an individual
   member of a co-partnership, as to matters not within the real or ap-
   parent scope of the business of the concern, does so at his peril, and,
   in the absence of subsequent ratification of the transaction, no lia-
   bility attaches to the partnership.

3. EVIDENCE: INSUFFICIENT TO PROVE RATIFICATION: OF UNAUTHORIZED
   ACT OF MEMBER OF NON-TRADING PARTNERSHIP. The mere execution
   of a quitclaim deed for a nominal consideration, by defendant and
   wife, to a corporation in which they were not interested, twelve years
   after the execution, by defendant's partner, of the agreement on which
   it is now sought to bind the defendant, is not sufficient evidence of
   ratification.

4. PARTNER IN NON-TRADING PARTNERSHIP: PRIMA FACIE NO AUTHORITY
   TO BIND HIS PARTNERS OUTSIDE SCOPE OF BUSINESS: BURDEN OF PROOF.
   A partner in a non-trading partnership has prima facie, no authority
   to bind the firm or another partner in a transaction not within the
   scope of the partnership business, and he who seeks to hold the firm
   liable, by virtue of such transaction, has the burden of showing that
   the contracting partner had authority to enter therein.[1]

Decided January 3, 1901.

Appeal from the Third District Court, Salt Lake County.—
*Hon. A. N. Cherry,* Judge.

Action upon a contract in which it was sought to establish
the individual liability of defendant S. as a partner in the
firm of G. S. & Co. From a judgment for defendant, plain-
tiff appealed.

AFFIRMED.

*Messrs. Truman & Williams, J. E. Frick, Esq.,* and *G.
M. Sullivan, Esq.,* for appellant.

---

[1]Cavanaugh v. Salisbury, 22 Utah 465.

---

Gutheil v. Gilmer et al.

---

"Where a member of a co-partnership gives a note in the co-partnership name, the presumption is that it is given for partnership purposes; and the burden of proof is upon the co-partnership to show the contrary." Littell v. Fitch, 11 Mich. 525; Carrier v. Cameron, 31 Mich.

After the fact of a partnership is proved by other evidence, the admission of one partner may be received to charge the partnership in relation to transactions during its existence, apparently within the scope of its partnership business. Phillips v. Purington, 15 Me. 425; Boyce v. Watson, 3 J. J. Marsh. (Ky.) 498.

The presumption is that Gilmer, who acted for the firm, was within the scope of its business. To presume otherwise is to presume that men go beyond the scope of authority and incur personal liability, wholly for the benefit of others.

The deed itself proves that some benefit was received by O. J. Salisbury.

"Although a purchase of property made by one partner upon the credit of the firm was originally outside of the firm business, yet if the other partner subsequently claims and obtains possession of it from the partner making the purchase, upon the ground that it is firm property, he ratifies the purchase and becomes liable for the price. He can not take the benefit and deny the obligation." 2 Herman on Estoppel, sec. 1098, citing Porter v. Curry, 50 Ill. 319.

The law is well settled that if one party by his own act intentionally makes the performance of his promise impossible, the other may at once bring an action against him for a breach. This principle of law is based upon good reason and absolute justice. Heard v. Bowers, 23 Pick. (Mass.) 445, 456; Newcomb v. Brackett, 16 Mass. 161; Butrick v. Holden, 8 Cush. (Mass.) 233; James v. Burchell, 82 N. Y. 108; Packer v. Steward, 34 Vt. 127; Rensens v. Mexican Nat. Con-

struction Co., 22 Fed. Rep. 522; Burton v. Shotwell, 13 Bush. (Ky.) 271; Wolf v. Marsh, 54 Cal. 228.

*W. C. Hall, Esq.,* and *Messrs. Dickson, Ellis & Ellis* for respondent.

One of the most important matters in partnership law is to ascertain what is included in the apparent scope of the business. Scope may be generally described as including what is reasonably necessary for the successful conduct of the business, measured by the nature of the business, the usages of those engaged in the same occupation in the same locality and subject to be enlarged also by the known habits and conduct of the particular firm itself. 1 Bates on Partnership, sec. 315.

The most important element to be relied upon, by persons dealing with the firm through one partner, to determine his authority, is the nature of the particular business in which it is engaged. Every occupation has certain essential characteristics, determining in the absence of notice to the contrary, what powers a partner may be assumed to possess; and the articles almost never enumerate a partner's power, and are rarely, if ever, seen; hence, the public can judge only by appearances, and the articles can not be used to control the apparent scope of the business as against one who had no notice of them. 1 Bates on Partnership, sec. 316.

The powers of a partner do not extend beyond what may fairly be regarded as coming within the ordinary necessities of the business. Hotchins v. Kent, 8 Mich. 526.

A partner can only bind the firm within the scope of the business, and a firm is not bound by a purchase of goods by one partner which is outside the real or apparent scope. When that limit is departed from, the act is analogous to the act of a member of a non-trading firm, and every person must take

notice of this fact.  Irwin v. Williar, 110 U. S. 499.

Almost all partnerships are, in one sense, particular partnerships.  It is very rare that more than one·branch of business is in' view, or that all varieties of trade are embraced; and the intrinsic characteristics of well-known callings are recognized by the court as presumptive limitations.  Beach on Partnership, sec. 317, note 3, and cases cited.

The scope of business is a matter of judicial cognizance, and many acts have become settled, as matter of law, to be within or without the implied powers of a partner.  We cite the following cases:  Ferguson v. Shepard, 1 Sneed (Tenn.) 254; Irwin v. Williar, 110 U. S. 499; Waller v. Keyes, 6 ·Vt. 257; Boardman v. Adama, 5 Iowa 224; Rimel v. Hayes, 83 Mo. 200; Freeman v. Bloomfield, 40 Mo. 391; Wells v. Turner, 16 Md. 133; Taylor v. Webster, 39 N. J. Law 102; Lawrence v. Dale, 3 Johnson Chanc. 23; Goodman v. White, 25 Miss. 163; 1 Bates on Partnership, sec. 317.

BARTCH, C. J.—This is an action upon contract, brought by the administratrix of the estate of Moroni R. Williams, deceased, against the defendants as partners doing business under the firm name of Gilmer, Salisbury & Company, to recover $5,500.  The suit, in fact, is against the defendant O. J. Salisbury as a partner of the firm, he being the only one upon whom summons was served.

In the complaint it is alleged, in substance, that, on November 20, 1882, the defendants, as co-partners, entered into a contract with the plaintiff's intestate, Moroni R. Williams, by the terms of which the defendants were to pay Williams $5,500 upon the sale of a,certain mining property, known as the Peabody mining claim, and that such payment was to be made only out of the proceeds of the sale when the same was effected by them.  On information and belief it is alleged that

on April 20, 1894, the defendants conveyed the mining claim in question for more than $5,500 but that they paid no part of that sum either to Williams in his lifetime, or to any one for the benefit of his estate since his death. The complaint also contains allegations of demand and refusal to pay before the bringing of suit, and alleges that the sum due, including interest, is $7,920. From the complaint and the record it further appears that, on March 29, 1881, the mining claim in dispute was conveyed by Williams to Monroe Salisbury; that the grantee, at the time of the execution of the contract, held the legal title; and that the contract was executed in the name of Gilmer, Salisbury & Company. In his answer, defendant O. J. Salisbury denies specifically all the allegations of the complaint referred to above, and denies that the defendants sold the mining claim, mentioned in the contract set forth in the complaint, for the consideration alleged or for any other consideration, or that they received any consideration or money therefor.

From the evidence introduced by the plaintiff, it appears that the firm name of Gilmer, Salisbury & Company was signed to the contract by John T. Gilmer, a member of that firm; that the firm was composed of John T. Gilmer, Monroe Salisbury and O. J. Salisbury; and that Gilmer was working other mines in the vicinity of the Peabody mine, but it is not shown that the firm, or the defendant O. J. Salisbury was interested in any of them. Among the instruments introduced in evidence was a deed, dated March 29, 1881, from Williams to Monroe Salisbury, conveying the mining claim in dispute for a consideration of $25,000, the receipt whereof is acknowledged by the grantor, in the instrument. The deed is absolute in form and contains nothing to indicate that it was a conveyance in trust, or that the grantee took it in trust for the firm or the defendant O. J. Salisbury. The contract sued

on and a quitclaim deed from O. J. and Monroe Salisbury and their wives, conveying the Peabody mining claim to the Stewart Mining Company, for the consideration of one dollar, were also admitted in evidence. There is likewise testimony showing that the individual members of the firm of Gilmer, Salisbury & Company were engaged in mining, but there is nothing to show that the firm, as such, was so engaged. On the contrary, it is shown by the proof that the firm of Gilmer, Salisbury & Company was engaged in the business of carrying mails of the United States Government, express matter and passengers. At the close of the testimony, the court, on motion of the defendant, entered a judgment of nonsuit, and its action in the premises has been assigned as error.

The decisive question presented is, whether the contract sued on renders the firm of Gilmer, Salisbury & Company, and, consequently, the individual members thereof, liable for the sum claimed to be due thereon.

Counsel for appellant insist that the presumption of law is that a contract made in the firm name is a co-partnership contract, and argue that the contract itself was prima facie proof that it was made on partnership account, and shifted the burden upon the defendant to show that it was not binding on the firm or on him.

The clause of the agreement, referring to the contracting parties, reads: "This agreement, made and entered into this twentieth day of November, 1882, between J. T. Gilmer, Monroe Salisbury and O. J. Salisbury, co-partners, and doing business under the firm name of Gilmer, Salisbury & Company, parties of the first part and Moroni R. Williams, party of the second part:" Then follow clauses to the effect that the same mining claim was previously conveyed by Williams to Monroe Salisbury for $16,000, of which $10,500 was paid; that such sale was made for the use and benefit of the firm of Gilmer,

Salisbury & Company, with the expectation that the purchaser would effect a sale of the property to third parties, and pay the balance of the purchase price out of the proceeds; and that no sale has been effected. Then follow stipulations that the first parties will pay the second party $5,500 out of the proceeds of any sale of the mining claim which they make, with interest after sale; that the second party releases the first parties from any liability or obligation to pay such balance, except out of the proceeds of sale; and that the first parties will exert themselves to make a sale. The contract is signed "Gilmer, Salisbury & Company. M. R. Williams."

If it be conceded that this instrument, in itself, is sufficient to raise a presumption that it was a partnership contract, then the question is, whether the plaintiff's own evidence is of such a character as to rebut the presumption, and show that no recovery against the defendant can be had in this case. Upon careful consideration we are of the opinion that this question must be answered in the affirmative. It is apparent from the proof that the firm of Gilmer, Salisbury & Company was a non-trading partnership. It was engaged in the business of running stages, carrying United States mails, transporting express matter and passengers. The very nature and character of that business is such that, in the absence of affirmative proof, it can not be assumed that mining or dealing in mines was within the scope of the partnership. No member of the firm, therefore, could bind the partnership, or any other partner thereof by a transaction, not within the ordinary or apparent scope of the partnership business, without special authority for that purpose. Of this a person dealing with a partner was bound to take notice. The law, in general, is, that one dealing with an individual member of a co-partnership, as to matters not within the real or apparent scope of the business of the concern, does so at his peril, and, in the absence

of subsequent ratification of the transaction, no liability attaches to the partnership. When, therefore, the plaintiff's intestate entered into the contract in question, with Gilmer, he was bound to take notice that Gilmer, without special authority, had no power to bind his firm, because the transaction was not within the scope of its ordinary business. There is no evidence whatever to show that Gilmer had any special authority to make the contract. Nor is there any proof to warrant a holding that either the firm or the defendant O. J. Salisbury ever ratified the transaction, or that such defendant was aware of the existence of the contract, until about the time this suit was commenced. The mere fact that about twelve years after the making of the agreement, in dispute, the defendant and his wife executed a quitclaim deed for the same property, to the Stewart Mining Company for the nominal consideration of one dollar, when there is no proof that the grantors were interested in that company, or that the existence of the contract was known to them, is not sufficient to justify the assumption that the defendant ratified the contract. Nor is there any thing, except the mere declaration of the contracting parties that the sale to Monroe Salisbury was for the benefit of the firm, to show that the contract was made for either the partnership or the defendant, or that the firm or any member thereof, except Gilmer, had anything to do with the transaction, or received any benefit or advantage because thereof. From the pleadings and the testimony it is manifest that the transaction, because of which this controversy arose, was without the scope of the ordinary business of the firm, and Gilmer having had no special authority for the firm, and there being an absence of any ratification by the firm or the defendant, no liability attached to either. There appears to be an entire failure of proof to hold the defendant liable, and, therefore, the nonsuit was properly granted.

In the case of Cavanaugh v. Salisbury, decided at the present term, where practically the same question was presented, this court said: "A partner without special authority can bind the firm only within the scope of the business, and the firm, in the absence of ratification, is not bound by any transaction of a partner outside the real or apparent scope. Where, therefore, as in this case, a partnership is engaged in the stage business, or the carrying of mails, passengers and express matter, a partner has prima facie, no authority to bind the firm or another partner in a transaction relating to the business of mining, and he who would seek to hold the firm liable, by virtue of such transaction, has the burden to show that the contracting partner had the authority to enter therein. The law in the case of a non-trading partnership implies no such power in a partner."

There are other questions presented, but, from the view we have taken of the case, further discussion is not regarded important. We find no reversible error in the record.

The judgment is affirmed, with costs. *Miner* and *Baskin, JJ.,* concur.