KATE GUTHIEL, as Administratrix of the Estate of MORONI WILLIAMS, Deceased, Respondent, v. J. T. GILMER, MONROE SALISBURY and O. J. SALISBURY, Copartners, Doing Business Under the Firm Name and Style of GILMER, SALISBURY & COMPANY, Defendants; O. J. SALISBURY, Appellant.

No. 1496.   (76 Pac. 628.)

5.  Partnership: Scope: Authority of Partner: Ratification.
Where an action was brought against partners individually, and the evidence showed the partnership, that the agreement sued on was entered into by a partner for the partnership, and that one of the partners, who alone was served with process, afterwards ratified the agreement he was bound thereby, though the transaction was entirely outside the scope of the partnership business.[1]

6.  Same: Ratification: Proof.
Where a partner entered into an agreement for the firm outside of the scope of its business it is not necessary, in an action thereon, that a ratification be established by direct proof, but it may be inferred from the general course of dealing between the members of the firm.

---

[1] Gutheil v. Gilmer et al., 23 Utah 84, 63 Pac. 817.

**7. Same: Facts Held to Show Ratification.**

In an action against partners on their agreement to purchase certain mining property, evidence *held* to show that the agreement was ratified by the partner who alone was served with process in the action.

**8. Same: Liability.**

Though a partner was without authority to make the agreement which he did for the purchase of mining property, another partner, who joined in a lease of the property, and received the benefits of the transaction, could not repudiate the contract, so as to escape the liabilities incurred thereby.

**9. Same: Contracts: Performance Made Impossible: Liability.**

Where, in an agreement for the purchase of mining property, a firm agreed to pay the unpaid balance of the purchase price from the proceeds of resale of the property, and afterwards, without making any attempt to sell the property to any one else, conveyed it, for a nominal consideration, to a corporation which they formed, having thereby intentionally made performance of the contract impossible, they are liable at once to their vendor for its breach.

**4. Same: Action: Nature: Parties.**

Where, in the caption of a complaint, the defendants are named individually, and described as copartners doing business under the firm name given, though it is alleged in the body of the complaint that they were copartners, the action is against them individually, and not against the partnership.

**1. Same: Nonsuit: Res Judicata.**

Revised Statutes 1898, section 3181, provides that a judgment of nonsuit may be entered on motion of the defendant when the plaintiff fails to prove a sufficient case for the jury, and in certain other cases. Section 3182 provides that, in every case other than those mentioned, judgment must be rendered on the merits. Section 3189 provides that a final judgment dismissing the complaint does not prevent a new action for the same cause, unless it expressly declares that it is on the merits. *Held,* that a judgment of nonsuit, on motion of the defendant, is not on the merits, so as to bar another action for the same cause.[a]

---

[a] Couch v. Welsh, 24 Utah 36, 66 Pac. 600.

2. **Same: Limitations: Extension of Time.**
2 Compiled Laws Utah 1888, section 3143, provided that an action on an instrument in writing could be commenced at any time within four years from the time it accrued. Act March 20, 1897, extended the limitation period to six years. Revised Statutes 1898, section 2484, provides that when a limitation has begun to run before the Revised Statutes go into effect, and a limitation is prescribed in the Revised Statutes, the time already run shall be deemed a part of the limitation prescribed by the Revised Statutes. *Held*, that an action on a written instrument accruing within four years prior to the passage of Act March 20, 1897, might be commenced any time six years after such accrual.

3. **Same.**
Under Revised Statutes 1898, section 2893, providing that if any action be commenced within due time, and the plaintiff fail otherwise than upon the merits, and the time limited shall have expired, he may commence a new action within one year after the failure, where a judgment of nonsuit was rendered, and on appeal affirmed after the expiration of the limitation period, the plaintiff had one year after such affirmance within which to commence a new action.

BARTCH, J., dissenting.

(Decided April 22, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. S. W. Stewart*, Judge.

Action upon a contract. The defendant, O. J. Salisbury, was the only member of the partnership served with summons and the only defendant who answered in the case. From a judgment in favor of the plaintiff, the defendant Salisbury appealed.

AFFIRMED.

*Messrs. Dickson, Ellis & Ellis* for appellant.

*J. E. Frick, Esq.*, and *G. M. Sullivan, Esq.*, for respondent. *D. S. Truman, Esq.*, of counsel.

### STATEMENT OF FACTS.

The plaintiff, as administratrix of the estate of Moroni Williams, originally commenced this action on the 13th day of October, 1899, in the Third Judicial District Court of this State, against J. T. Gilmer, Monroe Salisbury and O. J. Salisbury, copartners, doing business under the firm name and style of Gilmer, Salisbury & Co. In the year 1900 the case was tried by the court without a jury. After plaintiff had introduced her evidence and rested, O. J. Salisbury, who was the only member of the partnership served with summons, and the only defendant who answered in the case, interposed a motion for a nonsuit, which, so far as material here, is as follows: "Now comes the defendant O. J. Salisbury, and moves the court for judgment of nonsuit in the above-entitled action on the following grounds: (1) That the plaintiff has failed to prove a sufficient case for the jury." Then follow specifications wherein it was claimed the evidence was insufficient to sustain a verdict for plaintiff. The court sustained the motion, and on the 15th day of June, 1900, a judgment of nonsuit was entered, and the action dismissed. From this judgment the plaintiff appealed to this court. On January 3, 1901. an opinion written by Mr. Justice BARTCH affirmed the judgment of the trial court. Guthiel v. Gilmer et al., 23 Utah 84, 63 Pac. 817. On February 9, 1901, plaintiff again commenced an action in the same court against the defendants above named, alleging the same facts pleaded in her former action. The complaint, in part, alleges that "the said defendants, J. T. Gilmer, Monroe Salisbury, and O. J. Salisbury, at all times hereinafter mentioned, were partners carrying on business at the city and county of Salt Lake, State of Utah, and elsewhere, under the firm name of Gilmer, Salisbury & Co." It is further alleged "that no the 20th day of November, 1882, said J. T. Gilmer, thereunto duly authorized, entered into and executed an agreement in writing, in the firm name of Gilmer, Salis-

bury & Co., for and in behalf of said firm, with one Moroni Williams, which agreement is in words and figures as follows:

"This agreement, made and entered into this 20th day of November, 1882, between J. T. Gilmer, Monroe Salisbury and O. J. Salisbury, copartners, and doing business under the firm name of Gilmer, Salisbury & Co., parties of the first part, and Moroni R. Williams, party of the second part, Witnesseth:

"That whereas, the said party of the second part has heretofore conveyed to Monroe Salisbury, one of the parties of the first part, the certain mining claim, situated in the West Mountain Mining District, County of Salt Lake, and Territory of Utah, known as the Peabody mining claim, which said conveyance was made for the use and benefit of the said firm of Gilmer, Salisbury & Co., the said parties of the first part, for the purchase price of $16,000.00: And whereas, the said parties of the first part have already paid to the said party of the second part on said purchase price, the sum of $10,500.00 the receipt whereof is hereby by him acknowledged; And whereas, the said purchase was made with the expectation that said parties of the first part should effect a sale of said mining claim to third parties, and pay the balance of said purchase money out of the proceeds of said sale: And whereas, said parties of the first part have not yet effected such sale:

"Now, therefore, in consideration of the premises, and of one dollar by each of said parties to the other in hand paid, the receipt whereof is hereby by each acknowledged, the said parties hereto hereby mutually, covenant, agree and bind themselves as follows, to-wit:

"(1) The said parties of the first part will out of proceeds of any sale which they may make of said mining claim, pay to the said party of the second part, the sum of $5,500.00, being the balance of said purchase price, but it is understood that said balance shall not bear interest until the sale has been actually completed and the money paid.

"(2)   The said party of the second part hereby releases the said parties of the first part from any liability or obligation to pay said balance or said purchase money, except out of the proceeds of a sale of said mining property to be effected by them.

"(3)   It is understood and agreed that the said parties of the first part will exert their best efforts to make a sale of said mining claim.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.   Gilmer, Salisbury & Co.,   M. R. Williams."

This agreement was duly recorded December 26, 1882.

Plaintiff further alleges that on or about April 20, 1894, the defendants sold and conveyed the Peabody mining claim mentioned in said agreement, and received the purchase price thereof; that defendant O. J. Salisbury, being one of the members of the firm of Gilmer, Salisbury & Co., joined in the sale of said Peabody mining claim, and joined in and executed and delivered a deed of conveyance for said Peabody mining claim, and received and retained a part of the consideration received for the same; that defendants, nor either of them, have not paid the amount of money, or any part thereof, for said mine, agreed to be paid by virtue of the agreement above set forth, but have refused to pay the same, or any part thereof.   Defendant O. J. Salisbury was the only defendant served with summons, and he answered, denying the material allegations of the complaint relied upon by plaintiff for a recovery, and, as an affirmative defense, pleaded the judgment of nonsuit rendered in the former action as *res adjudicata* of every issue of law and fact made in this case.   He also alleged that the cause of action attempted to be stated in said complaint was barred by the provisions of section 194 of Code of Civil Procedure of the [then] Territory of Utah [Comp. Laws] 1888, section 3143, prior to its

repeal, and is barred by the provisions of section 2875, subd. 2, Rev. St. [1898.]''

The record shows that Gilmer, Salisbury & Co., was a partnership formed for the purpose of carrying the United States mail, express matter, and passengers. The partnership was composed of three members, viz., J. T. Gilmer, Monroe Salisbury, and O. J. Salisbury. From the time the partnership was formed, in 1870, until it was dissolved, in 1892, the members of the firm, individually and jointly, were engaged quite extensively in buying, developing and selling mines and mining claims, and in promoting mining enterprises, in this and adjoining States. When a member of the partnership purchased a mining claim on his own account. and for himself individually, he would generally draw on the partnership fund by issuing checks thereon in the firm name for the money necessary to consummate the deal, and then the firm would charge the amount to his personal account. On some occasions purchases were made by one member, and on others by two members, of the firm, for all three, and each member named as a grantee in the deed of conveyance taken for the properties so purchased. Sometimes notes were given in the name of the firm of Gilmer, Salisbury & Co. in payment for mining properties. And there is evidence in the record that the partnership, as a firm, was directly engaged in mining business at the time the contract under consideration was entered into.

Mary E. Gilmer, widow of J. T. Gilmer, testified, in part as follows: ''It was my impression that Gilmer, Salisbury & Co. were in partnership business in Bingham properties and other mining properties. I know it as well as I know anything that I did not transact myself. That is as far as I could say. . . . I have no knowledge of it, or a record of it, or anything of that sort.'' Isador Morris testified that ''the general repute in Bingham district from '78 was that they [referring to the partnership] bought these mines, and were engaged in mining. I meant by 'general repute' that they

were doing mining business; that the men there at Bingham understood these parties were doing business in mining.. 'This understanding at Bingham that they were doing business as partners in mining ran along until they incorporated.'' And again he says: ''I had mining business with the firm of Gilmer, Salisbury & Co. right there at the Stewart mine. . . . I say now that I had business [referring to mining business] with the firm of Gilmer, Salisbury & Co., the firm, . . . when they first bought the mine [meaning the Stewart mine] from Bates and Egan, it was Gilmer, Salisbury & Co.'' Peter Porter, a witness for the defense, testified in part as follows: ''Q. Do you know in what business they were engaged, [referring to the firm of Gilmer, Salisbury & Co.]? A. Well, mining, staging, and . . . well, they were engaged in a great many things.''

On December 18, 1878, a corporation was formed, known as the Stewart Mining Company, with a capital stock of 60,000 shares, of the par value of $100 per share. Each of the members of the partnership of Gilmer, Salisbury & Co. subscribed for and held 14,333 shares of the capital stock of the corporation, and each of them was made a director in the corporation. Defendant O. J. Salisbury filed a bond, and took the oath of office as director. The corporation was formed for the purpose of buying, selling, and working of mines, and doing a general mining business. While it appears that the business of this corporation was transacted and carried on in its corporate name, yet it was in fact on the credit of the firm of Gilmer, Salisbury & Co. When the foregoing agreement, which is the subject-matter of this suit, was entered into, the Stewart Mining Company commenced working and developing the Peabody mine in connection with other mines, the title of which were in J. T. Gilmer, Monroe Salisbury, and O. J. Salisbury. On April 28, 1888, the Stewart Mining Company leased its property, including the mines, for a period of six years, in which lease J. T. Gilmer, Monroe Salisbury,

and O. J. Salisbury joined as lessors; and all mines owned by them that were being worked by the Stewart Mining Company, including the Peabody mine, were included in the lease. In 1892 J. T. Gilmer was taken sick, and soon thereafter died. While he was sick and not expected to recover, a settlement of the partnership was had, and the firm of Gilmer, Salisbury & Co. was dissolved. O. J. Salisbury, on this point, testified, in part, as follows: "We had a partnership settlement in San Francisco immediately before Gilmer's death. It was just the members of the partnership composed of the three who had the settlement, and that settlement involved staging, mining, and other business." At this time the Stewart Mining Company had been conducting its business on the faith and credit of the firm of Gilmer, Salisbury & Co., and was deeply involved in debt. It had an overdraft at Wells, Fargo & Co.'s bank of over $190,000. Each member of the firm in the settlement assumed and paid one-third of this indebtedness. The Stewart Mining Company executed and gave its promissory notes to O. J. Salisbury, Monroe Salisbury, and to Wells, Fargo & Co., which company represented the interests of J. T. Gilmer, for the amount so paid. On April 20, 1894, O. J. Salisbury, Monroe Salisbury, and Mary E. Gilmer, for a nominal consideration, deeded to the Stewart Mining Company the Peabody mine, mentioned in the foregoing agreement. When the notes became due that were given by the Stewart Mining Company to O. J. Salisbury, Monroe Salisbury, and Wells, Fargo & Co., for the $190,000 that had been paid, they were sued on, judgment obtained, and the property of the company, including its mining claims, was sold under execution, and bought in at sheriff's sale by defendant O. J. Salisbury; and thereafter, on December 7, 1896, he deeded a one-third interest in the property so purchased by him, including a one-third interest in the Peabody mine, to Mary E. Gilmer, the consideration mentioned in the conveyance being $1,666.66. This conveyance was made in compli-

ance with an agreement had with Mary E. Gilmer at the time she deeded a one-third interest to certain mining claims, including the Peabody, in all of which Monroe Salisbury and O. J. Salisbury each owned a one-third interest, to the Stewart Mining Company, April 20 1894. On June 1, 1897, O. J. Salisbury and Mary E. Gilmer joined in a sale, and conveyed all the property, including the Peabody mine, to one A. Klopenstine, for $100,000.

The issues herein were submitted to a jury, who returned a verdict for the plaintiff. Defendant O. J. Salisbury appeals.

McCARTY, J., after stating the facts, delivered the opinion of the court.

The first question presented by this appeal is that of *res adjudicata.* Appellant contends that this action can not be maintained for the reason that the questions involved have been litigated and adjudicated in a former action. The judgment relied upon as an estoppel in this case was a judgment of nonsuit, and not as contended by appellant, a judgment on the merits. Section 3181 of the Revised Statutes of 1898 provides, so far as material here, as follows: "An action may be dismissed, or a judgment of nonsuit entered in the following cases: . . . (5) By the court upon motion of the defendant, when upon the trial the plaintiff fails to prove a sufficient case for the jury." Section 3182, Rev. St. 1898, provides as follows: "In every case, other than those mentioned in the last section, judgment must be rendered on the merits." Section 3189, Rev. St. 1898, provides as follows: "A final judgment dismissing the complaint, either before or after trial, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment roll, that it is rendered upon the merits." It will be observed that section 3182, Rev. St. 1898, in effect, provides that a judgment of nonsuit entered on motion of defendant when "the plaintiff fails to prove a

sufficient case for the jury" is not a judgment on the merits. The rule thus declared by our statutes is in harmony with the overwhelming weight of authority. 1 Freeman on Judgments, section 261. Mr. Black, in his work on Judgments (2 Ed.), section 699, says: "It is a settled and inflexible rule that a judgment of nonsuit is not a judgment upon the merits, and therefore is no bar to another suit upon the same cause of action." And again, in section 703, he says: "A judgment of dis- missal may also be asked for on the trial at the conclu- sion of the plaintiff's evidence in chief. And the grant- ing of such a motion can have no greater effect upon the cause of action than an involuntary nonsuit entered at the same stage. Hence the cases hold that the dismissal by the court of an action at law, while the same is on trial, and before its final submission, upon the ground that plaintiff has failed to establish his cause of action, is not a final determination on the merits, and therefore not pleadable against another action for the same cause." In A. & E. Ency. Law (2 Ed.), 801, this same rule is stated as follows: "It is well settled in the United States that a judgment of nonsuit, or in the na- ture of a nonsuit, is not an adjudication upon the merits, but leaves the parties in the same condition, so far as the cause of action is concerned, as though no action had ever been instituted, and hence can not constitute *res adjudicata.*" The doctrine thus announced in the text is supported by a long list of authorities cited in the footnote, which we deem it unnecessary to reproduce here. In the case of Couch v. Welsh, 24 Utah 36, 66 Pac. 600, this court held that an instruction at the close of the plaintiff's testimony directing a verdict for the defendant on the ground of failure of proof is in effect a nonsuit. McCay v. Ry. Co. (Mont.), 31 Pac. 999. Mr. Spelling, in his work on New Trial & App. Proc., sec- tion 352, vol. 1, says: "Whether plaintiff takes volun- tary nonsuit, or be nonsuited on motion of defendant, the judgment should be of nonsuit and dismissal, and not on the merits." When plaintiff at the former trial

concluded and rested her case, two courses were open, either of which defendant could have pursued if he was confident of his position that plaintiff had failed to prove a sufficient case for the jury.   One was a submission of the case on the merits for final determination, and thereby obtain a judgment that would be a bar to another action for the same cause; and the other was by motion for judgment of nonsuit, which, if granted, would leave the parties in the same situation in relation to the matter in controversy as they were before the action was commenced.   The defendant having pursued the latter course, and having obtained a judgment of nonsuit, nothing was concluded against the plaintiff, except to stop the further progress of that particular action, and the way was left open for plaintiff to commence another suit for the same cause.   Wood v. Ramond, 42 Cal. 643.   In the case of Gummer v. Trustees, etc., 50 Wis. 247, 6 N. W. 885, it is said that a defendant "should not be allowed to experiment with a motion for a nonsuit, and obtain the opinion of the court of the plaintiff's case, and, if he fails in his motion, then go to a full trial on the merits without also allowing the plaintiff, if he is the losing party on the hearing of the motion, to sue over.   If the defendant is not bound and concluded by the decision of the motion, the plaintiff should not be; and, if the rule is adopted that a nonsuit granted upon the motion of the defendant is bar to another action, then the correlative rule should be adopted that a decision against the motion operates as a judgment for the plaintiff."   The rule that a judgment or nonsuit is not a judgment on the merits is so well settled that a further discussion or citation of authorities would seem unnecessary.

The next contention of appellant is that the action is barred by the statute of limitations.   The cause of action accrued April 20, 1894, the date on which the defendant, O. J. Salisbury, conveyed his interest in the Peabody mine to the Stewart Mining Company.   The statutes of this State (then Terri-

tory) in force at that time provided that an action founded upon an instrument in writing could be commenced any time within four years from the time the cause of action accrued. Section 3143, 2 Comp. Laws Utah 1888. Before the limitation period fixed by said section 3143 had expired on the contract under consideration, the Legislature, by an act, approved March 20, 1897, extended the limitation period on actions of this character to six years, which gave plaintiff until April 20, 1900, in which to commence her action. Section 2484, Rev. St. 1898. This action was commenced originally October 13, 1899, which was within the limitation period. A judgment of nonsuit was rendered against plaintiff July 17, 1900, which judgment was affirmed by this court, January 3, 1901. Plaintiff, under section 2893, Rev. St. 1898, had one year from the time the judgment was affirmed in which to commence a new action on the same cause of action. The record shows that this action was commenced February 9, 1901, which was within a month and seven days after the former case was disposed of by this court. It will therefore be seen that the statute of limitation can not be invoked as a defense in this case.

The next contention of appellant is that the evidence is insufficient to support the verdict, in this: that there is no testimony whatever showing or tending to show that J. T. Gilmer had authority, either express or implied, to bind the firm of Gilmer, Salisbury & Co., or the defendant O. J. Salisbury, individually, in signing the contract set out in the complaint, or that the Peabody mine ever became a partnership asset. This action is brought against the individual members of the firm of Gilmer, Salisbury & Co., and not as suggested by counsel for appellant in their brief, against the partnership in its firm name. In the caption of the complaint the defendants are named and described as J. T. Gilmer, Monroe Salisbury, and O. J. Salisbury, copartners, doing business under the firm name and style of Gilmer, Salisbury & Co., and it is alleged in the

body of the complaint that defendants at all times therein mentioned were copartners. It was not only necessary to allege this, but it was incumbent upon plaintiff to prove a partnership, in order to show authority in Monroe Salisbury and J. T. Gilmer to bind O. J. Salisbury in the transactions under consideration. However, the action is brought against the defendants as individuals, and not as a partnership. 15 Ency. Pl. & Pr., 850. Davidson v. Knox (Cal.), 7 Pac. 413; Feder v. Epstein (Cal.), 10 Pac. 785; Parsons on Partnership, sections 249, 250. Therefore, if the evidence shows that the defendants were partners, and that the agreement under consideration was entered into for and on behalf of the partnership, and O. J. Salisbury afterwards ratified and adopted what had been done in the premises, he would be bound thereby, even though the transaction was entirely outside of the scope of the business of the partnership, and Gilmer, in the first instance, had no authority to bind the firm by signing the contract. Parsons on Partnership, section 148; 22 A. & E. Ency. Law, 136; Guthiel v. Gilmer et al., 23 Utah 84, 63 Pac. 817; Dudley v. Littlefield, 21 Me. 418. And it is not imperative that such ratification be established by direct proof, but it may be inferred from the general course of dealing between the members of the firm in relation to buying and developing of mining properties prior to and since the making of the contract referred to, and also from subsequent transactions in relation to the handling and disposition of this particular piece of property, to which defendant O. J. Salisbury was a party. 1 Bates on Partnership, sections 363, 366; Wheeler v. Rice, 8 Cush. (Mass.) 205; Wilcox v. Dodge, 12 Ill. App. 517. The record in this case shows that the members of the firm of Gilmer, Salisbury & Co. dealt extensively in mines in this and adjoining States, and nearly all deals of this character were made on the credit of the partnership, and in many of them the three partners had a joint and equal interest in the properties purchased. On this point O. J.

Salisbury testified, in part, as follows: "In 1878 and 1879 I was not giving much personal attention to mining enterprises at Bingham. Mr. Gilmer was giving the Bingham properties attention, and during those years I was giving attention to mining enterprises at Deadwood. About that time I was buying mining properties in the vicinity of Deadwood for myself, Mr. Gilmer, and Monroe Salisbury, and was paying for the properties by drafts on Gilmer, Salisbury & Co. . . . The drafts which I have testified to, that were drawn by me to pay for interests in mines which were acquired by me in the Dakotas—Deadwood—were drawn upon the firm at Salt Lake City; and drafts for like purposes were drawn by me upon J. B. Haggin, San Francisco, to pay for interests thus acquired by myself and J. T. Gilmer and Monroe Salisbury." And again referring to their properties in the Dakotas, he says: "I knew quite a number of these claims stood in my name, and whether they stood in my brother's or Mr. Gilmer's name I don't know. If they stood in my brother's name, I had an interest in them, and those that stood in my name, my brother and Mr. Gilmer had an interest in, and, so far as we three were concerned at that time, it was an equal interest. We held the property for all parties interested, of course. So far as the rights of myself, my brother, and Mr. Gilmer were concerned, we each had an equal share in it. They were purchased and paid for with a common fund. It was the common indebtedness of all three." And further he says: "The members of the firm drew upon Gilmer, Salisbury & Co., as a concern, for a great many other things besides matters pertaining to staging or a purchase of individual interests in mines—for our living expenses, and for any ventures that, as individuals, we might have gone into—with the condition that the financial condition of the company would justify it. We never did make any division of the profits otherwise than in that way." It thus appears that, while O. J. Salisbury was looking after the mining interests in the Dakotas, J. T. Gilmer was oper-

ating and dealing in mines in Bingham mining district, this State. Defendant O. J. Salisbury testified that "there was no difference in the matter of any authority to buy any mines either in Bingham or at Deadwood" (Dakota). He testified that he "didn't have any individual interest in any mines at Bingham through the copartnership or otherwise. No interest other than my stock in the Stewart Mining Company." When the Stewart Mining Company was incorporated, the Stewart-mine and mill, in which the three members of the partnership owned a large interest, together with the Constitution mine, all of which they owned, were accepted as full payment of the capital stock of the corporation. J. T. Gilmer, without any special authority, so far as shown by the record, transacted the business connected with the promotion of this enterprise for Monroe and O. J. Salisbury. He signed their names to the articles of incorporation, and later on entered into the agreement under consideration for the Peabody mine, which had previously been deeded to Monroe Salisbury by Williams, who was one of the parties to the agreement under consideration. During their mining operations in Bingham, both before and after the making of the contract in question, J. T. Gilmer and Monroe Salisbury purchased about 20 mining claims, and in each case Gilmer and the two Salisburys were named as grantees in the deeds of conveyance received for the property purchased. Most of these deals were made by Gilmer, and without any special authority, so far as shown by the record, from his associates, Monroe and O. J. Salisbury. The mines so purchased were afterwards conveyed, for a nominal consideration, to the Stewart Mining Company; O. J. Salisbury joining in the different conveyances as one of the grantors. These transactions to which O. J. Salisbury was a party not only tend to show that he ratified all that Gilmer did in making the numerous deals for mining properties referred to, including the deal for the Peabody mine, but when considered in connection with the

fact that it is admitted that the transactions referred to were practically all made on the credit of the partnership, and that an overdraft of more than $190,000, that had been incurred in a mining enterprise, was paid by the three members of the partnership, because it was extended on the credit of the firm, is strong proof that Gilmer had authority, in the first instance, to bind the members of the firm by these transactions. Even though it be conceded that Gilmer had no authority to act for and in the name of the firm, or the members thereof, in making the deal for the Peabody mine, and defendant O. J. Salisbury desired to escape the responsibilities of the transaction, it was incumbent upon him, under the circumstances, to repudiate the deal when notice was brought home to him of what had been done; but instead of doing this, he joins as a lessor in a lease of the property to the Bingham Mining Company, and later on he joins with Monroe Salisbury and Mary E. Gilmer, widow of J. T. Gilmer, in a conveyance of the same property to the Stewart Mining Company, a company in which he and his associates held 43,000 of the 60,000 shares of the capital stock of the corporation. He also joined in paying an overdraft of this company which had been incurred on the credit of the partnership, and accepted the notes of the company therefor, and when the notes were sued on, and merged in a judgment, and the property of the company, under execution, was advertised for sale, bought it in, and then deeded a one-third interest thereof to Mary E. Gilmer. He can not thus knowingly ratify and accept the benefits of the transaction, and at the same time repudiate and escape the responsibilies incurred thereby. Porter v. Curry, 50 Ill. 319, 99 Am. Dec. 520.

Appellant further insists that, as the record shows that the Peabody mine was conveyed to the Stewart Mining Company for a nominal consideration only, a recovery can not be had, as the contract provides that the balance of the purchase therein mentioned shall be paid out of the proceeds of any sale that

may be made of the property. The record shows that no attempt was made, whatever, to dispose of this mine, except to the Stewart Mining Company, which company commenced working the mine about the time the contract was entered into, and was one of the principal mines worked and developed by that company, and later on the mine was conveyed to the company, as hereinbefore stated. By thus conveying the mine to the Stewart Mining Company, defendant Salisbury, by his own intentional and deliberate act, made the performance of the contract with Williams impossible on his part. And the rule is well settled that when a party intentionally makes the performance of a contract on his part, to which he is a party, impossible, the other party may at once bring an action against him for a breach. Butrick v. Holden, 8 Cush. 233; Heard v. Bowers, 23 Pick. 455; Reusens v. Mex. Nat. Const. Co. (C. C.), 22 Fed. 522. In Wolf v. Marsh, 54 Cal. 288, the action was upon a contract in many respects similar to the one under consideration. The first part of the contract was in the form of a promissory note, with the following condition: "This note is made with the express understanding that if the coal mines in Marsh Ranch yield no profits to me, this note is not to be paid and the obligation herein expressed shall be null and void." Marsh sold the coal mines in the Marsh Ranch before they yielded him any profits, whereupon Wolf, the payee, sued to recover the amount due under the contract. Marsh defended upon the theory that the conditions of the contract had not been fulfilled, in that the mines had not yielded any profits. The court, in the course of the opinion, says: "Before the mines had yielded any profits to the defendant, he sold and conveyed his interest in them to a stranger. By so doing he voluntarily put it out of his power ever to realize any profits from the mines. However great the yield of profits from them might be after that they could yield none to him. And the principle is elementary, if one

27 Utah 33

voluntarily puts it out of his power to do what he has agreed to do, he breaks his contract, and is immediately liable to be sued therefor, without demand, even though the time specified for performance has not expired." This same principle is declared in the case of Dill v. Pope, 29 Kan. 289. In that case Dill sold to Pope one-twelfth interest in the Colorado gold mine for a certain sum, one-half of which was paid down, and the balance was to be paid in mineral to be taken out of the mine. Before any minerals were extracted from the mine defendant Pope sold and conveyed to a third party all of the interest in the mine he had purchased from Dill. Dill brought suit for the unpaid balance of the purchase price. Pope defended under the claim that he had taken no minerals out of the mines, and hence was relieved from the payment of the balance of the purchase price. The trial court ruled with the contention of the defendant, and the jury found the issues in his favor, and judgment was rendered in accordance with the verdict. In passing on the question, the Supreme Court, speaking through Mr. Justice Brewer, says: "In this the court erred. By selling the interest he had purchased, he [Pope], holding no other interest in the mine, and having no control or right to work it, disabled himself from ever complying with this condition. The moment he did this his conditional liability on the contract for the unpaid balance money became presently due. This is upon the well-settled principle that a party to a contract, who by his own act prevents the happening of a condition, is estopped thereafter to say that such a condition has not happened. No party to a contract can interfere to prevent the performance of any condition, and then claim any benefit or escape any liability from the failure of such performance." The facts in this case make a much more conclusive case for the plaintiff than the facts in either of the cases cited. O. J. Salisbury and his partners in business acquired the legal title to, and got possession of, the property under the agreement, and the deed therein mentioned,

and, for a nominal consideration, disposed of the mine to a corporation· of which they were in control, and owned most of the capital stock, O. J. Salisbury taking the initiative and leading part in the transaction, with the understanding that he would subsequently purchase the entire property of the Stewart Mining Company, including the Peabody mine, at execution sale in his own name for himself, Monroe Salisbury, and Mary E. Gilmer, which he subsequently did. Afterwards these parties joined in a deed, and disposed of the property thus acquired, including the Peabody mine, for the sum of $100,000. Therefore it will be seen that the property was eventually sold for a valuable consideration by these parties, and they, having accepted the benefits of the contract, can not escape the liabilities imposed by its terms. In other words, they could not by a circuitous method of dealing, which the record shows was, in effect, between themselves, appropriate and dispose of the property as their own, and by the same series of transactions release themselves from the liability to pay the balance of the purchase price.

We find no reversible error in the record, and the judgment is therefore affirmed, with costs.

BASKIN, C. J., concurs. BARTCH, J., dissents.