MARKELL, APPELLANT, v. MATTHEWS ET AL., APPELLEES.

1. AGENCY—RATIFICATION BY ADOPTION.
A party may not accept what has been done for him by one who is not his agent, and deny the power of the individual to act.   If he adopts the acts by accepting the benefits of the transaction, he will be charged with a responsibility for the things done.

2. APPELLATE PRACTICE—IMMATERIAL ERROR.
Where the trial was to the court without a jury, and there was sufficient competent testimony to support the finding and judgment, there cannot be a reversal because the court erred in permitting to be brought to its attention incompetent evidence, for it will be assumed that this did not influence its conclusion.

3. APPELLATE PRACTICE.
That a judgment is erroneous with respect to the amount for which it was entered, does not necessarily require the remanding of the cause.   The judgment may be modified and affirmed in this court.

*Appeal from the District Court of Pitkin County.*

Mr. CHARLES I. THOMSON, for appellant.

Mr. F. G. SALMON and Mr. F. S. RICE, for appellees.

BISSELL, J., delivered the opinion of the court.
VOL. III—4

There are no legal propositions of much difficulty to be settled and applied in determining the rights of the parties to this controversy. The application of the well settled principle of adoption or ratification will determine the whole matter. It is only needful to state the controversy to make it apparent that this principle must control the judgment.

In 1886, the appellant, Markell, and W. J. H. Miller were joint owners of the "La Salle" claim. They worked it together until early in January, 1887, when Markell, who apparently had been putting up all the expenses of operating the property, telegraphed Miller to stop work on his account. The order proceeded from a misunderstanding between the tenants in common which need not be stated. The order was disregarded in so far as it concerned the progress of the work, which Miller continued on his own account until early in July. It is unimportant to state the reasons which actuated Miller in this proceeding; the fact alone is the important element in the litigation. During the time that Miller was working the property, he incurred considerable debts which at the last date remained unsettled. Markell was a nonresident, and when he arrived in Aspen in July he entered into negotiations with Miller looking to the adjustment of their controversies. By reason of some antecedent transactions between these parties, Markell had become indebted to Miller to the extent of about $1,600, and Miller had brought suit to enforce his supposed rights in the property, and to recover what he claimed was due him. This is an important fact to remember when the question of ratification comes to be considered. While Miller was prosecuting his operations on the property, he mined and shipped considerable ore which he sold to the appellees, J. F. Matthews & Co. According to the quite common usage among people who are working mines which produce, but do not yield enough to pay current expenses, he obtained from Matthews & Company sundry advances upon ores to be mined and shipped. The advances were made under the agreement that they should be repaid by ore to be subsequently mined, if

sufficient for the purpose.   The arrangement seems to have
been carried out in good faith between Miller and Matthews
& Company, but the result was, that upon the conclusion of
their dealings there was due Matthews & Company upwards
of $1,800.   They brought this suit against Markell to compel
him to pay these advances.   He defended, set up his order
to stop work, and insisted that he could not be held liable
for the debts which Miller had contracted during the time
its operations were carried on contrary to his directions and
expressed wish.   It is tolerably clear that he cannot be held
liable on the theory of an agency properly exercised by Mil-
ler at the time the debt was contracted.   If he is to be held
at all it must be on the ground that he accepted and adopted
Miller's acts.   There is little difficulty to hold him on this
principle.   When he reached Aspen he entered into negoti-
ations with Miller to adjust their differences.   Miller's claim
to an interest in the property seems to have been recognized,
and Markell agreed that if he would forego his claim against
him for some sixteen hundred and odd dollars, and settle
upon the basis which he proposed concerning the interests
which Miller was to enjoy in the La Salle and Harrisburg
properties, he would pay all the debts which Miller had in-
curred during the time that he was working the property
without Markell's consent.   The indebtedness to Matthews
& Company was not the sole obligation which Miller had
contracted and left undischarged, but there were sundry
other claims for supplies of various sorts held against Miller
and the mine by the dealers in Aspen.   These supplies in-
cluded groceries and materials which are essential to mining
operation.   It is important to state what Miller did on the
property whereby the debts accrued.   There seems to be no
question that it was development work which tended to the
opening up and advancement of the claim as a piece of min-
ing property.   There is another very important circumstance
to be stated in this connection.   This claim was adjacent to
what was called in that section the "Durant" property, and
it was for the interest of the owners of the claims that a

drift should be run along the boundary line between the two properties. This work was done by Miller under an agreement that the Durant Company should pay for it. The work was done at a profit, and netted a thousand dollars, which was paid into the common treasury of the La Salle mine. Markell received the benefit of the expenditures which Miller made and of the money earned and paid into the treasury. There is thus an ample consideration for the agreement which Markell made concerning these debts. Unless there be some legal obstruction to a recovery he should be held liable under his agreement. The recovery can easily be supported. A party may not accept what has been done for him by one who is not his agent, and deny the power of the individual to act. In other words it is settled by the authorities that it is enough to charge the principal with a responsibility for the things done, if he adopts the acts by accepting the benefits of the transaction. In this case work was done on the property to its advantage ; Markell got the benefit of the profits from running the line drift between the La Salle and Durant claims ; he agreed to accept the benefit of the ore which had been shipped to Matthews & Company at the time of his agreement with Miller, and he was released from a liability to Miller amounting to upwards of $1,600. Under all these circumstances it must be held that Markell so far ratified Miller's acts that he became liable for the debts which he agreed to pay.

During the progress of the trial it was sought to prove the making of the advance which was the real cause of action by the production of a note to Matthews & Company, executed in September following the agreement, and running as the individual promise of Miller to Matthews, Webb & Company. It was for a certain sum at 2 per cent interest signed by W. J. H. Miller, Manager, and by W. J. H. Miller. It was strenuously objected that this note was not competent evidence against Markell, and in no manner tended to establish his liability for the claim sued on. The objection was well taken and the note should have been excluded. There is no

force in the contention that an exception was not sufficiently taken to the introduction of the evidence. The case was tried to the court without a jury. The objection taken was not a general one, but was specific and raised the precise questions which are now presented for determination. The court admitted it, subject to the objection which was to be disposed of on the final hearing. Judgment passed against Markell, an exception was duly taken, and it must be held that this sufficiently saves the question to entitle the party to raise it on the appeal. Whatever error was committed in this regard cannot operate to reverse the judgment. The note was wholly unnecessary to the maintenance of the plaintiff's cause of action. This was sustained otherwise by sufficient competent testimony. It was clearly proven that Miller and Matthews & Company entered into an agreement concerning the shipment and purchase of the ore. The money sued for was shown to have been advanced by Matthews & Company. Markell adopted the agreement, accepted its benefits and promised upon a sufficient consideration to repay the money. Since there was sufficient competent testimony to support the finding and judgment of the court, and the case was tried without the intervention of a jury, there cannot be a reversal because the court erred in permitting to be brought to its attention incompetent evidence. It will be assumed that this did not influence its conclusion.

The court entered judgment for an erroneous sum. There was some evidence offered which tended to prove that at the time Miller got the advances he agreed to pay 2 per cent per month interest for the money. Aside from the note, there was no proof of any agreement that would in the absence of express authority and ratification as to that part of the contract bind Markell to pay this interest. There was neither authority nor ratification. In this respect the judgment is erroneous. This error does not require us to send the case back for the entry of a proper judgment. It can be entered here and the rights of the parties properly protected and conserved.

The judgment will therefore be modified and affirmed. It is ordered that the interest included in the judgment in excess of the statutory rate be deducted from the amount of the judgment as entered, and that final judgment be entered in this court for the amount of the claim and statutory interest to the time of the entry, and that the costs of the appeal be divided between the parties.

The judgment is modified and affirmed.

*Affirmed.*