[S. F. No. 7107.   Department One.—October 30, 1916.]

PATRICK HOLLAND, as Administrator of the Estate of Mary A. Holland, Deceased, Appellant, v. JULIA Mc-CARTHY, JAMES E. McDERMOTT, and MARY McDERMOTT, Respondents.

AGENCY—REAL ESTATE BROKER—AUTHORITY TO FIND PURCHASER—CONTRACT OF SALE.—A written instrument executed by the owner of land, which merely authorized a real estate broker to find a suitable purchaser, without binding the owner to make a sale if a purchaser were found, does not empower the broker to make a contract of sale binding on the owner.

ID.—AUTHORITY OF AGENT TO SELL LAND MUST BE IN WRITING.—An agent's authority to make a contract of sale of land of his principal is not valid unless it is in writing and signed by the principal.

ID.—ESCROW—DEPOSIT OF DEED WITH THIRD PERSON—ABSENCE OF CONTRACT OF SALE.—The deposit of a deed with a third person to be delivered to the grantee only upon payment of the price fixed by the grantor is not sustainable as an escrow, where there was no prior or contemporaneous contract of sale of which the delivery of the deed was to be the consummation.

ID.—OFFER TO SELL — WITHDRAWAL BY GRANTOR — DEPOSITARY A MERE AGENT OF GRANTOR.—Where there was no prior or contemporaneous contract of sale, the deposit of a deed with a third person, with oral instructions to deliver it to the grantee upon payment to the depositary for her own use of a price fixed by the grantor, constituted a mere offer which the grantor had the legal right to withdraw at any time before the payment by the grantee of the amount specified, and the depositary was nothing more than a voluntary agent of the grantor to hold the deed subject to the latter's order. Until the consummation of the transaction by the grantee, the depositary had no right to the money specified as the price.

ID.—DEATH OF GRANTOR—TERMINATION OF OFFER AND AGENCY OF DEPOSITARY.—The death of the grantor terminated and revoked the offer and the authority of the depositary, as agent of the grantor, subsequently to accept the money and deliver the deed.

ID.—ACQUIESCENCE OF GRANTEE IN DEPOSIT.—The mere consent of the grantee, after its deposit, that the depositary might retain the deed until he was ready to pay the money did not convert the deed into a valid escrow.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

W. E. Cashman, and R. M. F. Soto, for Appellant.

William A. Kelly, for Respondents.

SHAW, J.—The plaintiff appeals from the judgment below. The complaint states a cause of action to quiet title to a lot in San Francisco. In addition to the usual allegations it states that the defendant McCarthy has in her possession a deed signed and acknowledged by the decedent Mary A. Holland purporting to convey the lot to the McDermotts, but that

said deed had never been delivered. The prayer is for judgment quieting title and for the delivery up of the deed for cancellation.

The court gave judgment that McCarthy deliver the deed to the McDermotts, upon the payment by them to her of three thousand dollars, to be kept by her for her own use, and declaring that when the money was paid and the deed so delivered, the McDermotts would be the owners of the lot, and that the plaintiff has no interest in the lot, either as administrator of said estate or otherwise.

The facts relating to the title and to said deed may be briefly stated.

On April 20, 1911, Mary A. Holland was the owner of the lot. On that date A. G. Sala, James W. Doherty, and the defendant, Julia McCarthy, called on her at her home. Doherty was a notary public. Mary A. Holland, in the presence of the other three persons, then signed the deed in controversy and acknowledged its execution before Doherty as notary public, who thereupon made and attached to the deed his official certificate to that effect. Mary A. Holland then handed the deed to Julia McCarthy, saying to her that it should be delivered by her to the McDermotts upon the payment of the sum of three thousand one hundred dollars, and that when she received the three thousand one hundred dollars she should give one hundred dollars to Sala for his commission and keep the three thousand dollars for herself. The deed was in the usual form. It purported to convey the lot, in consideration of ten dollars to James E. McDermott and Mary McDermott, husband and wife. After this disposition of the deed Mary A. Holland signed and delivered to Sala an instrument in writing as follows:

"Apr. 20, 1911.

"To Sala & Sala.

"I hereby agree to sell that certain lot on the west side of Capp St. 155 feet north of 18th street. Size 30 x 122½ feet, at the price of $3000.

"MARY A. HOLLAND."

"Witness A. G. SALA."

On the same day, prior to the visit to Mary A. Holland, Sala and the McDermotts had executed a contract, the material parts whereof are as follows:

"San Francisco, Cal., April 20, 1911.

"Received of Jas. and Mary McDermott the sum of three hundred and ten dollars, being deposit on account of thirty-one hundred dollars, the purchase price of the property this day sold to them and subject to the owners' approval, situate . . . [then follows the description of the lot in controversy and certain provisions for sixty days time to examine title, and that the price was to be paid in cash on tender of a deed conveying good title].

"SALA & SALA.
"A. G. SALA."

"I, the said Jas. and Mary McDermott hereby agree to purchase the above described property and to comply with all conditions herein contained.

"JAS. and MARY McDERMOTT.
"By MARY McDERMOTT."

No money was paid as recited in said agreement, or at all, on the purchase price and sale. Neither of the McDermotts ever saw Mary A. Holland or had any agreement or communication with her, nor did they ever pay or tender the price of the lot, or any part of it, to any person. A few days after April 20, 1911, Mary McDermott called on Julia McCarthy, saw the deed in McCarthy's possession, was told by McCarthy that when the McDermotts paid the three thousand dollars the deed would be delivered to them, and Mary McDermott then said that they would give her, McCarthy, the three thousand dollars when she, McCarthy, gave them the deed. Nothing further was said or done then or afterward relating to the sale or to the completion thereof. Mary A. Holland died on May 7, 1911.

The instrument signed by Mary A. Holland, addressed to Sala & Sala, was not a valid contract by her to sell the lot to the McDermotts, or to any other person. Sala & Sala were real estate brokers. At most, that instrument merely authorized them to find a suitable purchaser, without binding the owner to make a sale if a purchaser were found, and we do not say that it is valid for that purpose. It did not authorize Sala & Sala to make a contract of sale for Mary A. Holland to any person. (*Grant* v. *Ede,* 85 Cal. 418, 420, [20 Am. St. Rep. 237, 24 Pac. 890]; *Swain* v. *Burnette,* 89 Cal. 564, 569, [26 Pac. 1093].)

From the propositions last stated, it follows that the contract between Sala & Sala and the McDermotts was not binding on Mary A. Holland. It does not even purport to bind her or to be made in her behalf, or as her contract, but even if it did, it would be invalid, so far as she is concerned, for the reason that the brokers had no authority in writing to make a contract of sale for her. An agent's authority to make a contract to sell the land of his principal is not valid unless it is in writing and signed by the principal. (Civ. Code, sec. 1624, subd. 5.) It may be added that there is no evidence that they, or either of them, had from her even verbal authority to make such contract for her.

The only foundation, therefore, for the claim that the McDermotts, or Julia McCarthy, had any right or interest in the lot, or its proceeds, lies in the delivery of the deed to Julia McCarthy. This deposit, as we have seen, was not made in pursuance of any prior contract between Mary A. Holland and the McDermotts, or McCarthy, for the sale of the lot. It was not done to carry out any such contract, oral or written, for, so far as appears, none had been made. There is no evidence that any such agreement was made at the time of the deposit. The McDermotts were not present at that time, and none of those present was authorized to act or contract for them, or either of them, or assumed to do so.

The case, then, stands thus: Mary A. Holland was willing to sell the lot for cash at the price of three thousand one hundred dollars, and, apparently, she desired to do so and make a gift of the proceeds to Julia McCarthy. She was, as we may infer, informed that the McDermotts were willing to buy the lot at that price. Thereupon she executed this deed purporting to convey it to them and deposited it with McCarthy, with instructions to her to deliver it to the grantees on payment of three thousand one hundred dollars and to keep the money for herself except the one hundred dollars to be paid to Sala. The promise of the McDermotts that they would pay the price on delivery of the deed was made afterward, and to the depositary only. It does not appear that it was ever communicated to Mary A. Holland, the owner, or that the depositary had any authority from the owner to make any contract or agreement concerning the lot except to deliver the deed upon payment of the three thousand one hun-

dred dollars, none of which was ever paid. In this condition of the affair Mary A. Holland died.

The case is similar in principle to *Fitch* v. *Bunch,* 30 Cal. 212. Mrs. Fitch, the owner, deposited with Norton a deed to Bunch to be kept by Norton, pending negotiations for a sale of the land to her by Bunch, and to be delivered to Bunch on the order of her agent, if the sale was agreed upon. She declined to make the sale, but an order was given to Norton, by her agent, for the delivery of the deed. Before that order was given she sued Norton to enjoin such delivery. Discussing the effect of the deposit as a valid delivery in escrow, the court said: "Not only must there be sufficient parties, a proper subject matter, and a consideration, but the parties must have actually contracted. . . . The grantor must have sold and the grantee must have purchased the land. A proposal to sell, or a proposal to buy, though stated in writing, will not be sufficient. The minds of the parties must have met, the terms have been agreed upon, and both must have assented to the instrument as a conveyance of the land, which the grantor would then have delivered, and the grantee received, except for the agreement then made that it be delivered to a third person, to be kept until some specified condition is performed by the grantee, and thereupon to be delivered to him by such third person. The actual contract of sale on the one side, and of purchase on the other, is as essential to constitute the instrument an escrow as that it be executed by the grantor; and until both parties have definitely assented to the contract, the instrument executed by the proposed grantor, though in form a deed, is neither a deed nor an escrow; and it makes no difference whether the instrument remains in the possession of the nominal grantor or is placed in the hands of a third person, pending the proposals for sale or purchase." A similar question arose in *Cagger* v. *Lansing,* 43 N. Y. 550. Speaking of the effect of a deed on deposit as a memorandum satisfying the statute of frauds, the court said: "No one will contend that a contract for the sale of land, executed by the vendor, is binding upon the purchaser unless the contract is delivered to and accepted by the purchaser as a valid subsisting contract. A delivery in escrow cannot bind the purchaser although he verbally promises to perform the condition. Until performance and accept-

ance by the purchaser, he is at liberty to abandon the contract.''

In *Cannon* v. *Handley,* 72 Cal. 133, 144, [13 Pac. 315], it is said that an oral contract of sale is sufficient to make a deed deposited in pursuance thereof an escrow, and that the deed, deposited in pursuance of such oral contract, is a sufficient note or memorandum in writing subscribed by the party to be charged to satisfy the statute of frauds and render the contract valid and enforceable. In that case there was a prior oral contract of sale. The statement that a deed so deposited was a sufficient memorandum to satisfy the statute of frauds is supported by citations to *Cagger* v. *Lansing,* 57 Barb. (N. Y.) 421, and *Rutenberg* v. *Main,* 47 Cal. 214. The decision in *Rutenberg* v. *Main* does not discuss the question. The decision in *Cagger* v. *Lansing* was made by the New York supreme court, but in the court of appeals the case was reversed, and it was there decided, as indicated by the above quotation from 43 N. Y. 550, that the deed did not constitute a sufficient memorandum in writing to take the case out of the statute. But, however this may be in some cases, it cannot be successfully claimed that the deed involved in the present case is sufficient for that purpose. It was introduced in evidence and, as stated, it shows a consideration of only ten dollars. Therefore, instead of being a memorandum of the contract on which defendants rely, it is utterly inconsistent therewith. No case has been cited, and we have found none, where the deposit of a deed with a third person to be delivered to the grantee only upon payment of the price fixed by the grantor has been sustained as an escrow, where there was no prior or contemporaneous contract of sale of which the delivery of the deed was to be the consummation.

We are not here concerned with the case of deeds put in escrow for subsequent delivery upon the happening of a future event with regard to which the grantee has no causative function and in which the delivery is absolute, the grantor retaining no right of recall or revocation, and where the transaction is not to consummate a contract of sale but for the purpose of effecting a gift. Such transactions are governed by a different rule, and a contract is not an essential part thereof. Here no right to revoke or recall was expressed as a condition at the time the deed was handed to Julia McCarthy. But, as no part of the consideration was paid, this was not necessary.

Mary A. Holland had the right to recall the deed at any time before the grantees paid the money specified. Until that event, Julia McCarthy was nothing more than a voluntary agent of the grantor to hold the deed subject to her order. Only upon the payment of the price or some part thereof would the grantees have a beneficial interest sufficient to make delivery irrevocable. Prior to such payment the delivery was nothing but an offer or proposal which the grantor had the legal right to withdraw. Her death terminated and revoked the offer and the authority of Julia McCarthy as her agent subsequently to accept the money and deliver the deed. (*Seibel* v. *Higham*, 216 Mo. 132, [129 Am. St. Rep. 502, 115 S. W. 987].) At the time of her death she had not parted with the title nor bound herself to do so, and it at once descended to and vested in her heirs free from any claims of the defendants. The consent of the McDermotts, after its deposit, that Julia McCarthy might retain the deed until they were ready to pay the money did not convert the deed into a valid escrow, for no consideration passed, and they remained, as before, without beneficial interest and with nothing more than an unaccepted offer awaiting their acceptance. No interest could vest in them sufficient to make the escrow beyond recall without payment by them of some consideration.

The transaction did not vest in Julia McCarthy any right to the three thousand dollars. It was to be paid by the McDermotts. Inasmuch as the transaction was inchoate and vested in the McDermotts no right until they paid or tendered the money, it necessarily follows that no right vested in the defendant McCarthy. There was, at best, nothing more in her favor than a mere intention on the part of the decedent to give her the money in the event that it was paid, which intent she did not carry out in her lifetime. Our conclusion is that the court erred in giving the judgment appealed from, and that, upon the facts disclosed by the evidence, the plaintiff is entitled to judgment.

The judgment is reversed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.