[Civ. No. 103.  Fourth Appellate District.—February 14, 1930.]

J. O. BULLOCK, Respondent, v. R. B. McKEON, Appellant.

Rohe & Freston and Ralph E. Lewis for Appellant.

Siemon & Garber for Respondent.

MARKS, J.—Respondent recovered judgment against appellant in the sum of $1,000 as liquidated damages based upon an alleged breach of contract.

Under date of June 9, 1926, respondent and his wife, Winnifred Mae Bullock, as lessees, secured an oil lease upon 160 acres of land in Kern County, from Clarence T. Mills and Elsie J. Mills, the owners of the property. The lease provided that operations for the drilling of a well for oil or gas must be commenced by the lessees within three years from its date. An extension of the drilling requirements for one year could be obtained by the lessees paying to the lessors ''Two Hundred Fifty ($350.00) Dollars'' on or before the expiration of the three-year period. Two additional yearly extensions might be obtained by making the same payment on or before the end of each year.

Respondent secured the services of L. G. Helm and E. W. Bailey, two brokers, to secure an oil operator who would take over part of the leased land and perform the drilling requirements of the lease. They approached appellant who, on July 8, 1927, paid to the First National Bank of Bakersfield, California, which we will hereafter refer to as the bank, the sum of $1,000, which payment was accompanied with the following letter of instructions:

"July 8th, 1927.

"First National Bank,

"Bakersfield, California.

"Gentlemen: I hand you herewith One Thousand ($1,000.00) Dollars, with the following instructions: Leases to be deposited from Bullock to Helm and Bailey, and assignment from Bullock, Helm and Bailey to R. B. McKeon, covering North One-Half (N½) of Southwest (SW¼) Quarter, Section Twenty-four (24), Township Twenty-eight (T28), Range Twenty-eight (R28), Kern County, terms being one-sixth (⅙) royalty, and Standard drilling requirements. This to be a three (3) year paid up lease. In consideration of the above lease and assignment, I agree to pay the total sum of Twelve Thousand ($12,000.00) Dollars cash, as follows; One Thousand ($1,000.00) Dollars this day paid, and Eleven Thousand ($11,000.00) Dollars on or before 4 p. m., July 24th, 1927. In case I do not desire to go through with this deal, you are instructed to deliver the One Thousand ($1,000.00) Dollars to Helm and Bailey, as liquidating damages. When the Eleven Thousand ($11,000.00) Dollars is paid, I am to be furnished with a guarantee and certificate of title for Twelve Thousand ($12,000.00) Dollars, showing the property free and ·clear of all incumbrances, subject only to the above mentioned lease. I am also to deliver an agreement to pay an additional One Hundred ($100.00) Dollars, per acre in oil, out of Twenty-five (25%) per cent of net production.

"R. B. McKeon,

"809 Great Republic Life Bldg."

On July 9, 1927, Helm and Bailey handed to the Kern County Abstract Company of Bakersfield a letter signed by E. W. Bailey, addressed to the abstract company, dated July 9, 1927; a letter to the abstract company, signed by respondent, dated in one place July 7, 1927, and in another place, July 8, 1927; an unsigned agreement between R. B. McKeon and E. W. Bailey, dated July 7, 1927; and an agreement between J. O. Bullock and Winnifred Mae Bullock and R. B. McKeon, in words and figures as follows:

"This indenture, made this seventh day of July, 1927, by and between J. O. Bullock and Winnifred Mae Bullock, husband and wife, as first parties, and R. B. McKeon, as

second party, Witnesseth: Whereas, the first parties are the owners of an oil and gas lease dated June 9, 1926, executed by Clarence T. Mills and Elsie I. Mills, his wife, as lessors, with first parties herein as lessees, and covering all of the southwest quarter (SW¼), Section twenty-four (24), Township twenty-eight (28) south, Range twenty-eight (28) east M. D. B. & M., in the County of Kern, State of California, containing one hundred and sixty acres (160), more or less, and which said lease was recorded June 28, 1926, in book 132 of official records at page 212, records of Kern County, California. Now therefore, for and in consideration of the sum of ten dollars ($10.00) to them in hand paid and other good and valuable consideration, first parties do hereby sell, assign, transfer, and set over to second party the said lease as above described, in so far as the same relates to and affects the north half (N½) of said southwest quarter (SW¼) of said section twenty-four (24), the portion hereby assigned containing eighty acres (80), more or less; and, The second party in consideration of such assignment does promise and agree as follows, to-wit: First. That he will faithfully comply with each and every of the terms and conditions of said oil and gas lease, in so far as the said portion thereof hereby assigned to him is concerned, and will save and keep harmless the said parties from and on account of any obligation or liability whatsoever, in so far as such portion so assigned to him is concerned. Second. That he will on or before three years from date hereof, commence the actual drilling (spud in) of an oil and gas well upon said leased premises, and prosecute the drilling thereof with due diligence and dispatch until at least a depth of thirty-five hundred feet (3500 ft.) has been reached, unless oil or gas is found in paying quantities at a lesser depth; and continue such drilling operations thereafter in full conformity with the requirements of said lease. Third. That he will in event oil is produced from said premises pay to the said first parties an additional consideration for said assignment in the sum of Eight thousand dollars ($8,000.00), same to be payable out of twenty-five per cent (25%) of the first oil or gas produced thereon. Fourth. And, further, that he will pay to the said first parties an over riding royalty in the amount of two per cent

(2%) of all oil and gas produced and saved from said premises and at the times and in the manner provided for the payment of the base royalty in said lease. And it is mutually understood and agreed that the covenants and agreements herein contained shall inure to the benefit of, and shall be binding on the heirs, executors, administrators, successors, or assigns of the respective parties hereto.

"In Witness Whereof the parties hereto have hereunto set their hands the day and year first above written.

"J. O. BULLOCK,

"WINNIFRED MAE BULLOCK,

"First Parties.

"R. B. McKEON,

"Second Party."

This was acknowledged by the first parties July 8, 1927, and by McKeon on the next day.

The Bailey letter to the abstract company instructed it to examine the title to the leased property and to write its usual guarantee of title showing title in the lessors free and clear of all encumbrances, except current taxes, and the oil lease, with appellant as the assignee of the north one-half of the leased property; that one-half the escrow charges and cost of the guarantee be paid by appellant and one-half by Bailey; that the company close the escrow when it had received from appellant $12,000 and, in addition to the requirements of the instructions given by respondent, an agreement executed by appellant agreeing to pay Bailey a separate royalty of two and one-sixth per cent from said property. Of the $12,000 to be paid by appellant, $8,000 was to be paid to respondent and $4,000 to Bailey. The letter of respondent to the abstract company transmitted two copies of the agreement between Bullock and wife and McKeon hereinbefore copied, and authorized the abstract company to deliver one copy thereof to Bailey and one to appellant when he had executed the same and paid to the abstract company $8,000. It further provided that respondent would be at no expense in connection with the title search and escrow fees and reserved the right to withdraw his papers from the escrow after fifteen days. The unexecuted agreement which we have referred to, provided that McKeon would pay to Bailey "an over riding royalty equal to two and one-sixth per cent of all oil or gas pro-

duced therefrom during the full term of said lease, and any renewal or renewals thereof.''

Neither appellant nor respondent met during the negotiations which were carried on by Bailey and Helm on one side, and appellant on the other. Respondent and his agents knew that McKeon had placed his instructions and the thousand dollars with the bank, but appellant was not informed that respondent's papers were deposited with the abstract company. Bailey testified that prior to the papers being deposited in either place, he told McKeon that respondent's papers would be placed with the abstract company. The triplicate agreements between Bullock and wife and McKeon, which we have set forth at length, were taken by Bailey to the Bullocks, who signed the same and returned all copies to him. He then took them to McKeon, who signed the copies and returned them to Bailey, who then deposited two of them with the abstract company.

July 24, 1927, fell on Sunday. About noon on July 25, 1927, appellant called at the bank and asked whether or not the papers connected with the lease had been left with the bank and stated that he desired to look them over.' There being nothing at the bank in connection with the transaction other than his letter and $1,000, he asked for and was paid his money, and withdrew from the escrow. On the afternoon of the same day respondent with Bailey and Helm appeared at the bank with all the documents which we have mentioned as left with the abstract company. On the letters to the abstract company they crossed out the words ''Kern County Abstract Company'' and inserted the words ''First National Bank of Bakersfield'' in their stead and gave the documents to the cashier of the bank, together with a letter from the abstract company, dated July 15, 1927, addressed to R. B. McKeon, giving the condition of the title of the leased property. The contents of the letter had not been communicated to McKeon. The report showed various encumbrances on the property, among them appearing the following: A reservation to the United States of America, in its patent, of the rights of way for ditches and canals constructed by authority of the United States; right of way 200 feet wide granted to the Southern California Edison Company across the leased property for its transmission lines; a deed of trust to secure a note for $400

and also additional loans not to exceed $400; a grant of a right of way for road purposes. It was stipulated that the title remained in the same condition up to and including July 25, 1927. Bailey and Helm assigned to respondent all their interest in the claim against appellant before the action was filed.

In this case we have the appellant depositing his money and letter of instructions with the bank thereby constituting it his agent for the purpose of the transaction, while respondent placed his instructions and papers with the title company thereby making it his agent in the matter. (*Shreeves* v. *Pearson*, 194 Cal. 699 [230 Pac. 448].) Appellant contends that since there were separate agents acting for the parties, and the agents were not brought into communication, there was no contract resulting between the principals. While there might be force in this argument, we do not need to decide it in this case.

Appellant's letter to the bank, accompanied by his deposit of $1,000, was merely an offer to respondent to perform according to the terms he imposed. Where the deposit of an instrument in escrow follows an agreement between the parties it may constitute part of a contract, but where it is not preceded by a contract it is at best a mere offer (*Holland* v. *McCarthy,* 173 Cal. 597 [160 Pac. 1069]). In this case we have no evidence of any prior agreement of the parties and therefore must look to the documents themselves as prepared by them for their respective actions and intentions in the transaction.

The only consideration which appellant was to receive, under the terms of his offer was performance by respondent and his assignors, and, until such performance he would receive no consideration for his offer. "The law as applied to the making of contracts permits one making a mere offer to another to withdraw it at any time before it has been accepted by the latter. 'A proposal may be revoked at any time before its acceptance is communicated to the proposer, but not afterwards.' This applies although the offer is continuing in nature and is to remain open for a specified time, unless the promise to hold it open is supported by sufficient consideration." (6 Cal. Jur., p. 51; *Roth* v. *Moeller,* 185 Cal. 415 [197 Pac. 62].) Therefore,

unless respondent had accepted appellant's offer prior to the withdrawal of his money on July 25, 1927, such withdrawal was authorized by law and respondent cannot complain because of it.

■ The consent to a contract must be mutual (sec. 1580, Civ. Code). An offer of performance must be absolute and unqualified (sec. 1494, Civ. Code) and must be communicated to the other party or his agent (sec. 1488, Civ. Code). An offer of partial performance has no effect and cannot bind the other party unless accepted by him (sec. 1486, Civ. Code). ■ In this case there was no acceptance of appellant's offer, either partial or complete, ever communicated to him, and none to the bank until after he had withdrawn his deposit and closed his part of the escrow. This act revoked the agency of the bank and it was not authorized thereafter to receive an offer of performance on the part of respondent.

■ In order to make an acceptance of an offer binding, it must conform to the terms of the offer and must not propose new conditions. If it does so, it is not an acceptance, but constitutes a counter offer which in turn must be accepted to become binding on the parties. We find that the attempted offer of performance by respondent and his assignors differed from the offer of appellant in at least two particulars and attempted to impose added burdens upon him. Respondent and Bailey attempted to place upon appellant one-half of the cost of the guarantee of title and escrow charges of the abstract company, none of which he was to pay according to his offer. Appellant provided in his offer that he was to pay no rental upon the leased property until the year commencing July 8, 1930. Under the terms of the lease an annual installment of rental became due on June 9, 1929, and another on June 9, 1930. If such rentals were not paid a forfeiture of the lease might result. It was incumbent upon respondent and his assignors to make some provision for, or at least an offer to pay the rentals up to July 8, 1930, and not compel appellant to take the risk of either having to pay them himself or suffer a forfeiture of the lease. ■ The terms of an escrow instruction are to be strictly construed, and until the other party has complied with such terms as so construed, he can gain no rights under them. (*Dyson*

v. *Bradshaw*, 23 Cal. 528; *Los Angeles High School Dist.* v. *Quinn*, 195 Cal. 377 [234 Pac. 313]; *McCarthy & Meyer* v. *Bank of Italy*, 68 Cal. App. 166 [228 Pac. 724].) We believe that the attempted acceptance of appellant's offer by respondent and his assignors was defective in that it did not purport to be an absolute or unconditional acceptance of its terms, and if made before appellant withdrew his offer would not have bound him.

Judgment reversed.

Sloane, P. J., and Barnard, J., concurred.