[Civ. No. 7659. First Appellate District, Division One.—January 31, 1931.]

S. B. COWAN, Respondent, v. ELMER TREMBLE et al., Appellants.

H. J. Bischoff for Appellants.

Davis & Thorne and W. A. Anderson for Respondents.

THE COURT.—This action was brought to recover damages for the alleged breach of a contract. The jury returned a verdict for the plaintiff in the sum of $3,000. Defendants' motion for a new trial was denied, and they have appealed from the judgment entered on the verdict.

The defendants, who are copartners, were conducting a transfer business between Los Angeles and neighboring cities under the name of Service Motor Express Company. In January, 1923, Carl I. Jacobson—who, as the evidence shows, was the agent of plaintiff—commenced negotiations with

defendant Tremble, who was in charge of the partners' Los Angeles office, for the purchase of the business. An offer of $23,000 was made which, after Tremble had communicated with his partner at Riverside, was accepted. The latter, however, suggested to Tremble that as a condition to the sale the buyer should agree to purchase any additional motor equipment needed in the business which the partners might purchase before the transfer, and also that the sale should not include an adding machine and typewriter owned by the partnership. Subsequently on January 27, 1923, two documents, called escrow instructions, were executed by Jacobson and Tremble and deposited with an attorney as escrow-holder. These documents stated in substance that Jacobson delivered therewith to the attorney $1,000 as part payment on the purchase price of $23,000, the latter sum being stated therein to be "the full consideration for the transfer and sale of the entire equipment, properties, goodwill of business and operating franchises and all assets now possessed by the Service Motor Express Company"; that the balance of the purchase price should be paid into escrow within ninety days from date, with the understanding that the purchasers might at their election assume any debts of the sellers up to $8,000, in which event this amount should be deducted from the purchase price; that the sellers should immediately cause a corporation to be formed, to which the title to all equipment, operating franchises and assets of the Service Motor Express Company should be transferred, the expense of incorporation, however, not to exceed $300, which was to be borne by the purchasers and the amount deducted from the first payment of $1,000; also that the seller should deposit with the attorney a financial statement showing the property to be free of debts and encumbrances except the sum of $8,000 above mentioned; that an inventory and appraisement of all the equipment, trucks and property should be made and placed in escrow, and that the sellers should immediately furnish a statement of all their liabilities. The latter also agreed to fully perform within ninety days, it being provided that in case of failure so to do the purchasers at their option might terminate the agreement and recover the amount paid, but that in the event of the purchasers' failure to perform, the amount paid should be forfeited to the sellers. It was also stipulated as follows:

"It is the purpose and intent of the purchasers and sellers in this escrow that the transfer of the properties hereinabove described for the consideration herein mentioned shall be effected and accomplished by the incorporation of said company, and by having all property hereinabove described transferred and considered as assets of said corporation when so formed, and then upon the forming of said corporation the properties hereinabove described shall be transferred by sellers to purchasers by a transfer of the entire stock of the corporation."

While it was testified by defendant Tremble that the conditions suggested by his partner were communicated to Jacobson, and that the latter stated that the purchase of needed equipment would be satisfactory, these conditions were not made a part of the escrow agreement. The complaint alleged in substance that defendants failed to perform the stipulations above set forth, and before the expiration of the ninety-day period notified plaintiff that they would not perform. These allegations were denied.

Among the grounds for the appeal it is contended that for the following reasons the verdict is unsupported, namely, that Jacobson was not authorized in writing to represent the plaintiff in the transaction; that there was no consent by defendant Fletcher to the terms of the escrow agreement, and that plaintiff failed to deposit the unpaid balance of the purchase price with the escrow-holder on or before the expiration of the ninety-day period.

It is well settled as a general rule that an undisclosed principal can either sue or be sued on the contract made by his agent (1 Cal. Jur., Agency, sec. 131, p. 854; *Parker* v. *Otis,* 130 Cal. 322 [92 Am. St. Rep. 56, 62 Pac. 571, 927]; *Schader* v. *White,* 173 Cal. 441 [160 Pac. 557]); and the fact that plaintiff brought the action thereon was a sufficient ratification of the acts of Jacobson (2 Cor. Jur., Agency, sec. 132, p. 513; *Argenti* v. *Brannan,* 5 Cal. 351; *Thompson* v. *Spray,* 72 Cal. 528 [14 Pac. 182]). Moreover, contracts within the statute of frauds need be subscribed only by the party to be charged or his agent (Civ. Code, sec. 1624), and may be enforced notwithstanding they are not signed by the plaintiff or his authorized agent (*Cavanaugh* v. *Casselman,* 88 Cal. 543 [26 Pac. 515]; *Scott* v. *Glenn,* 98 Cal. 168 [32 Pac. 983]). Nor does this rule

render the contract liable to the objection of a lack of mutuality, for by bringing the suit the plaintiff binds himself to abide by the judgment of the court (*Harper* v. *Goldschmidt*, 156 Cal. 245 [134 Am. St. Rep. 124, 28 L. R. A. (N. S.) 689, 104 Pac. 451]; *Allen* v. *Dailey*, 92 Cal. App. 308 [268 Pac. 404]; Williston on Contracts, sec. 140, p. 314).

▐ Defendant Fletcher refused to sign the escrow agreement or to proceed with the sale. As a rule every general partner is agent for the partnership in the transaction of its business; but the statute then provided (Civ. Code, sec. 2430) that a partner as such had no authority to dispose of the goodwill of the business, or the whole of the partnership property at once unless it consisted entirely of merchandise, or to do any act which would make it impossible to carry on the ordinary business of the partnership, unless his partners had wholly abandoned the business to him or were incapable of acting.

Although defendant Tremble would be personally liable on the contract in any event (*Lewis* v. *Clarkin*, 18 Cal. 399; *Brooke* v. *Glide*, 39 Cal. App. 534 [179 Pac. 546]), under the above section he was without authority to bind his partner as to any of the acts enumerated therein without the latter's consent; and as a condition to his consent to a transfer of his interest in the business defendant Fletcher might impose any restrictions upon Tremble's authority that he saw fit, and Tremble, like any other agent, would be bound to observe the same; ▐ and where a person dealing with a partner has notice of the restrictions upon his authority the acts of the partner in contravention of such restrictions are not binding on the firm or the other partners unless the latter by their conduct have waived the restrictions or limitation (47 Cor. Jur., Partnership, sec. 296, p. 833).

▐ Though the evidence shows that Fletcher's consent was conditional that plaintiff's agent was apprised of the fact and that plaintiff was also notified by Fletcher before the ninety-day period had expired of the latter's objection to the contract, and refusal to proceed on that account, it was also shown that after the expiration of the escrow period the escrow-holder—who was also defendant's attorney—proceeded with the incorporation of defendants' business, the articles being filed in June, 1923. This, as testified by Fletcher, was because defendants believed that their business

could be conducted more conveniently in that manner; and if the deal with plaintiff finally went through the incorporation would serve some purpose in that connection. It was also shown by the testimony of the attorney that part of the amount paid by plaintiff, namely, about $300, was used for that purpose, and that later defendants were given credit for the balance upon a claim for services rendered by the attorney in other matters. While defendant Fletcher testified that he refused to accept any part of the deposit, the attorney's testimony was sufficient to support the conclusion that both partners knew of its application and acquiesced therein.

Defendants claimed that plaintiff, by his failure to pay the balance of the purchase price, forfeited the above amount and that consequently the use thereof for defendants' bene- fit was proper. This was a manifest recognition of the contract by both defendants; and while the rule as to the limitation of a partner's authority is as above stated, his copartners, notwithstanding his previous want of authority, may be bound by his acts where with knowledge of the facts they acquiesce therein, as by accepting and retaining the benefits of the transaction (20 R. C. L., Partnership, secs. 100, 101, pp. 890, 891; *Jones* v. *Clark,* 42 Cal. 180; *Markell* v. *Matthews,* 3 Colo. App. 49 [32 Pac. 176]; *American Exchange etc. Bank* v. *Georgia Const. etc. Co.,* 87 Ga. 651, [13 S. E. 505]; *Porter* v. *Wilson,* 113 Ind. 350 [15 N. E. 676]; *Mathis* v. *Taylorsville Bank,* 32 Ky. Law Rep. 807 [106 S. W. 1174]; *Golding* v. *Brennan,* 183 Mass. 286 [67 N. E. 239]; *Doll* v. *Hennessy Mercantile Co.,* 33 Mont. 80 [81 Pac. 625]; *Pearce* v. *Wilkins,* 2 N. Y. 469; *Griffing* v. *Dunn,* 23 S. D. 141 [20 Ann. Cas. 579, 120 N. W. 890]; *Guthiel* v. *Gilmer,* 27 Utah, 496 [76 Pac. 628]; *Lynch* v. *Flint,* 56 Vt. 46; *McDougall* v. *McDonald,* 86 Wash. 334 [150 Pac. 628]).

 The evidence was sufficient to justify the conclusion that notwithstanding Fletcher objected to the contract, he acquiesced therein and accepted the benefits thereof.

 It is admitted that plaintiff failed to deposit in escrow the balance of the purchase price; and it is contended that this constituted a defense to the action. The evidence shows that defendants refused to carry out the agreement and so notified the plaintiff before the expiration of the es-

crow period. Under such circumstances no tender of performance by plaintiff was necessary (Civ. Code, sec. 1440); and the rule also applies where, as was the case here, the facts show that a tender would have been unavailing (*Hoppin* v. *Munsey*, 185 Cal. 678 [198 Pac. 398]).

Plaintiff was permitted over objection to testify that he verbally authorized Jacobson to act for him in the transaction. For the reasons previously stated in connection with the objection that plaintiff could not recover without showing that the authority of his agent was in writing, the objection was properly overruled.

A letter addressed by plaintiff's attorney to the escrow-holder, who was also the attorney for defendants, both attorneys having their offices in Los Angeles, was admitted in evidence over defendants' objection that the mailing of the letter was not shown, or that the same was received before the expiration of the escrow period. The letter was dated April 26, 1923; and it was clear from the testimony of the addressee that he received the same through the mail, the exact date however not being shown. The letter referred to the transaction in question, and stated plaintiff's willingness to consummate the sale. The addressee testified that he was unable to remember the date of its receipt, and there is no presumption that it was mailed on the day it bears date. Considering the nature of the communication, however, it is a fair inference from the testimony of this witness that had it been received after the period mentioned he would have remembered the fact, and the circumstances furnished sufficient foundation for its admission in evidence.

The jury in arriving at the amount of plaintiff's damage, was permitted to consider the part payment made by him and retained by defendants. This was proper, for, as the rule has been stated, "when the contract has been partly performed the plaintiff, upon a breach of it, loses more than the mere value of the contract; he has not only lost the benefit of the contract, but he has also lost the expense of partial performance on his own part". (Sedgwick on Damages, 9th ed., sec. 615, p. 1198; *Cunningham* v. *Dorsey*, 6 Cal. 19; *Cederberg* v. *Robison*, 100 Cal. 93 [34 Pac. 625].)

Other instructions complained of were correct in the abstract, and none can fairly be said to have been prejudicial.

As to certain instructions offered by defendants and refused we find no merit in the claim that the rulings were erroneous.

After considering all the evidence we are satisfied that the verdict was fully sustained, and that no error is disclosed which would warrant the conclusion that the result was a miscarriage of justice.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1931.