[Civ. No. 22629.   Second Dist., Div. Three.   June 5, 1958.]

HAROLD GELBER et al., Appellants, v. WILLIAM S. CAPPELLER, as Trustee, etc., et al., Respondents.

Abraham Gottfried for Appellants.

Baker, LeBel & McNairy for Respondents.

NOURSE, J. pro tem.*—By their amended complaint in this action appellants sought to specifically enforce a contract for the sale to them by respondents of certain real property or in the alternative to recover damages for the breach of that contract. From a judgment denying either specific performance or damages they appeal.

By their amended complaint the appellants, Harold Gelber and Elsie Q. Gelber, alleged that the respondents, Nellie M. Cappeller, and William S. Cappeller[1] as trustee under a testamentary trust, were the owners of the subject real property and that on or about the 25th of February, 1955, they and the appellants placed escrow instructions with the defendant Bank of America National Trust and Savings Association (hereinafter called bank) wherein and whereby the respondents agreed to sell to the appellants the property in question and the appellants agreed to buy said real property for the sum of $12,500 and that the parties agreed that the title to said property should be vested in a nominee of appellants; that the appellants had performed all of the terms and conditions of the agreement on their part to be performed and were ready, willing and able to fulfill them and that the consideration of $12,500 was a fair and reasonable value of the property sold. The remaining allegations of the amended complaint are not pertinent to the questions necessary for us to decide on this appeal.

---

*Assigned by Chairman of Judicial Council.

[1] Where we refer to the respondents Cappeller we do not include William S. Cappeller in his individual capacity but only as trustee.

By their answer the respondents Cappeller admitted the execution of the contract of purchase and sale but denied that they had agreed that the vestee might be a person other than the appellants; denied that the appellants had performed the terms of the contract on their part to be performed; and alleged affirmatively that prior to the commencement of the action the contract had been terminated by respondents in accordance with the terms of the contract. It was stipulated at the trial that the $12,500 purchase price was the reasonable market value of the subject property at the time the contract was entered into.

The trial court found that the parties did enter into a contract in writing for the purchase and sale of the real property in question for the price of $12,500; that it was not true that the respondents agreed that said contract be modified to the end that appellants might nominate another person than themselves in whom title should be vested upon consummation of the transaction; found that it was not true that the appellants had performed all of the terms and conditions of the contract on their part to be performed and that respondents had, prior to the commencement of the action, terminated the contract sought to be enforced by appellants pursuant to the terms of the contract.[2]

It is appellants' contention that the finding that the contract had not been modified as to vesting of title in a nominee, the finding that the contract had been terminated by respondents prior to the commencement of the action in accordance with the terms of the contract and the finding that appellants had failed to perform the contract are contrary to the evidence; and that the evidence shows that the contract was fully performed by appellants and that, at the time respondents attempted to terminate, a true and irrevocable escrow existed and that the appellants were entitled to have the contract specifically enforced in accordance with its terms.

The pertinent facts are not in dispute. Chronologically stated they are: On or about February 25, 1955, there was signed and delivered to the respondent bank an instrument entitled "Escrow Instructions," by which the appellants agreed to, on or about April 21, 1955, deposit with the bank a certain amount of cash and a note for the balance of the purchase price secured by a deed of trust upon the subject property and instructed the bank to deliver the cash and said

---

[2]There are many findings as to evidentiary matters but the foregoing states the substance of the findings of the court upon the ultimate facts.

note and deed of trust to respondents when the bank had filed with it for record instruments entitling it to procure a policy of title insurance showing title to be vested in appellants subject only to the purchase money deed of trust executed by appellants and to general and special taxes for the fiscal year 1954-1955.

It was further provided in appellants' instructions that if the bank were unable to comply therewith prior to April 21, 1955, it would comply as soon as possible thereafter "unless a written demand for return of money or instruments by a party to this escrow is received by you subsequent to such date and prior to the recording of any instrument provided for herein."

Respondents by their instructions accepted and approved the instructions of appellants and agreed to deposit with the bank the deed required to meet the conditions of appellants' instructions and authorized the delivery of this deed when the bank held for respondents' account the note and deed of trust and the down payment.

On March 10, 1955, there was deposited with the bank an instrument signed by appellant Harold Gelber and respondent Nellie M. Cappeller stating that "grantee vesting" would be handed the bank by Gelber and on March 11 Gelber deposited with the bank an instrument reading as follows: "Title to the within described property is to be vested in PACIFIC SIDE INVESTMENT CORP., A California Corporation." This instrument was signed in the name of the designated vestee by appellant Harold Gelber as president and his wife Elsie as secretary and affixed to it was a seal bearing the name "PACIFIC SIDE INVESTMENTS, INC.," and on the same date a real estate broker deposited with the bank for the account of appellants the sum of $1,250.

On May 2nd respondents deposited with the bank a grant deed executed by them as grantors and naming "PACIFIC SIDE INVESTMENT CORP., A California Corporation" as grantee, this deed having been signed and acknowledged by them on April 29, 1955.

On May 25th appellant Harold Gelber, in writing, gave notice to the bank cancelling the escrow and demanding return of his deposit. The respondents refused to accede to the cancellation of the escrow and notified the bank that they expected the bank to consummate the transaction. On August 3, 1955, the respondents, through their attorneys, demanded of appellants that they complete the escrow. After conferences

with respondents' attorneys appellants on November 5, 1955, deposited $5,150 with the bank and on November 15, 1955, deposited in the escrow a promissory note for $7,500 signed by them and payable to respondents, this note being executed by appellants as individuals. At the same time they deposited a trust deed securing "one promissory note of even date herewith in the principal sum of $7,500.00 payable to Beneficiary or order" and which stated "This deed of trust is given to secure a portion of the purchase price of the within described property." This deed of trust was signed by "PACIFIC SIDE INVESTMENT, INC." and bore the seal of that corporation.

On the same date the appellants also deposited with the bank a demand, in writing, that the escrow be completed.

On November 17th the attorneys for respondents wrote the appellants that they had induced their clients to accept appellants' "cancellation of this transaction" and at the same time the respondents notified the appellants and the bank that they were cancelling the escrow.

In our opinion the foregoing facts establish the contract as alleged by appellants, i.e., a contract for the purchase by them, with title to be taken in the name of their nominee, of the property in question, and the full performance by them of that contract.

The finding of the trial court that the original contract between the parties was not modified so as to permit appellants to nominate a third party in whom the title to the property should be vested upon consummation of the contract is entirely unsupported by the evidence. It is respondents' contention that as the amendment to the escrow instructions by which appellants were permitted to name a third person as vestee was signed only by the respondent Nellie M. Cappeller, it was insufficient to constitute a modification of the contract. This contention is without merit for after execution of this modification and the nomination of the vestee, both respondents caused to be placed in the escrow a grant deed of the property in question in which deed the nominee was named as grantee, and they thereafter continuously asserted, until their attempted rescission in the following November, that appellants were obligated to complete the escrow upon the basis of the deed placed in the escrow by respondents. These acts constituted a ratification by respondent William S. Cappeller of the amendment signed by his cograntor and estops him from asserting that the contract was not modified. ( *Gregg*

v. *Carey*, 4 Cal.App. 354 [88 P. 282] ; *Scott* v. *Glenn*, 87 Cal. 221 [25 P. 405].)

The escrow instructions as modified constitute a contract between the parties for the sale and purchase of the subject property with title to be vested in the vendees' nominee on consummation thereof. (*Tuso* v. *Green*, 194 Cal. 574 [229 P. 327] ; *Thoroman* v. *David*, 199 Cal. 386, 390 [249 P. 518].) They also constituted an agreement between the parties to consummate their agreement in a certain manner, that is: By the deposit by the respondents of the instrument of conveyance with the escrow holder and the deposit by the appellants with that escrow holder of the down payment and a note for the balance of the purchase price and a deed of trust securing that note.

Under the instructions given by the parties the escrow holder became the common agent of both parties and held all monies and documents deposited with it for the benefit of both until either its powers under their instructions were terminated, or the conditions under which the escrow was to be closed by it had occurred in which latter event it became agent and trustee for the vendors as to the monies and documents deposited by the vendees and agent and trustee for the benefit of the vendees as to the instruments of conveyance of the other documents deposited by the grantor. (*Shreeves* v. *Pearson*, 194 Cal. 699, 707 [230 P. 448] ; 18 Cal.Jur.2d 325-327, 341-342.)

On May 25th the respondents had fully performed all of the terms of the contract of purchase and sale and all of the conditions of the escrow on their part to be performed, for they had deposited the deed required and instructed the escrow holder to procure the required policy of title insurance showing title to be vested in the vendees' nominee upon recordation of that instrument.

When, on May 25th, appellants attempted to cancel the escrow, they were in default, having failed to deposit with the escrow holder the balance of the down payment or the note and deed of trust securing the balance of the purchase price. Being in default they had no right to either terminate the authority of the common agent of the parties or to terminate or rescind the contract of purchase and sale, and that contract, as well as the escrow created under it, remained unaffected by appellants' notice of cancellation. (*North American etc. Co.* v. *Outer Harbor etc. Co.*, 178 Cal. 406, 413 [173 P. 756] ; *Fairchild etc. Co.* v. *Southern etc. Co.*, 158 Cal. 264, 273 [110

P. 951]; *Pyle* v. *Benjamin*, 102 Cal.App. 691, 697 [283 P. 372]; 25 Cal.Jur., p. 659, 679-680.)

The notice given by appellants on May 25th to the escrow holder to cancel the escrow being but an abortive attempt to cancel their contract with respondents, respondents had the option of treating appellants' act in giving notice of cancellation of the escrow as an offer to rescind their contract, and accepting that offer with the result that the contract would have been mutually rescinded, or of treating it as a breach of the contract entitling them to sue for damages or to stand upon the contract and insist upon its performance. (25 Cal.Jur. 704, 705; *Amaranth Land Co.* v. *Corey*, 182 Cal. 66, 67 [186 P. 765].) Respondents adopted the latter course and appellants were entitled to accede to the respondents' repeated demand that they perform their contract. This they did by depositing all monies and instruments required of them with the escrow holder before any attempt had been made by respondents to terminate that escrow.

When appellants had completed all of the conditions of the escrow on their part to be performed (the final condition was complied with on November 15th) the escrow holder was in a position to close the escrow and the deed deposited by respondents became the property of the appellants, held in trust for them by the escrow holder and the monies and instruments deposited by appellants became the property of the respondents, held in trust for them by the escrow holder. (*Shreeves* v. *Pearson, supra*, 194 Cal. 699, 707; 18 Cal.Jur.2d 325-327, 341-342.) In other words, on November 15th, the contract to purchase and sell had been fully consummated and it was beyond the power of either party to rescind the contract or terminate the escrow.

It is the contention of the respondents, however, that appellants did not perform the terms of the contract on their part to be performed. Their contention in this regard is threefold. They first contend that they were entitled to a deed of trust executed by appellants as individuals, and that therefore the placing in escrow of a deed of trust executed by appellants' nominee did not constitute performance. This contention cannot be upheld. The appellants were required to deposit in the escrow a deed of trust which would constitute a first lien upon the property to secure the balance of the purchase price. The only person who could execute a deed of trust which would constitute such a lien was the person to whom title was conveyed by respondents. The parties having

agreed that title should become vested in Pacific Side Investment Corp., and it having been named as grantee in the deed placed by respondents in the escrow, it was the only person who could execute the deed of trust.

■ Respondents next contend that inasmuch as the grantee named in the deed was "Pacific Side Investment Corp., A California Corporation" and as the deed of trust was executed by Pacific Side Investment, Inc., that the deposit of that trust deed in the escrow did not constitute performance by appellants.

There was no evidence that there was any such corporation as Pacific Side Investment Corp., and it is apparent from the evidence that the use of this name constituted merely a misnomer. The amendment to the escrow instructions which named the nominee vendee of appellants, was executed in the name of "PACIFIC SIDE INVESTMENT CORP, A California Corporation," but it, as well as the note placed in the escrow and which was executed by the appellants individually, bore a corporate seal bearing the name "PACIFIC SIDE INVESTMENTS, INC." There was therefore evidence before the court which would have permitted it to order the deed placed in the escrow by respondents corrected so as to show the proper name of the grantee. The misnomer did not, therefore, invalidate the deed as a conveyance to Pacific Side Investments, Inc., and the trust deed executed by it was fully operative as a conveyance to the trustee therein named. (*Sixth District etc. Assoc.* v. *Wright,* 154 Cal. 119 [97 P. 144] ; *Budd* v. *Joseph Zukin Blouses, Inc.,* 90 Cal.App. 447 [265 P. 1038] ; *Indian Ref. Co., Inc.* v. *Royal Oil Co., Inc.,* 102 Cal.App. 710 [283 P. 856] ; *Goldberg, Bowen & Co.* v. *Dimick,* 169 Cal. 187 [146 P. 672] ; 12 Cal.Jur.2d 653.)

■ It is further asserted by respondents that the deed of trust deposited by appellants in the escrow, did not, by its terms, secure payment of the note deposited by them in the escrow. They assert that the trust deed purports to secure the note of the party executing the deed of trust (the trustor). We find nothing in the deed of trust to support this contention. Read as a whole, it purports to secure the balance of the purchase price of the subject property as evidenced by a promissory note of "even date" in the principal sum of $7,500. The note executed by appellants evidenced the indebtedness comprising the balance of the purchase price and as it is the balance of the purchase price which is secured, the fact that indebtedness is evidenced by

the promissory note of the vendees under the contract in no way affects the efficacy of the trust deed to secure that indebtedness.

When, on November 17, 1955, respondents notified the trustee to cancel the escrow and attempted thereby to rescind or terminate their contract of purchase and sale, the appellants were not in default but had fully performed all of the conditions of the contract on their part to be performed and the escrow holder was no longer the common agent of the parties but held the deed deposited by respondents for the benefit of the appellants only and held the monies and documents deposited by appellants for the benefit of the respondents and it was its duty to complete and close the escrow.

In short, at the time respondents attempted the termination of the transaction, both parties had waived the time limitation for the close of the escrow as set forth in the escrow instructions and there had been, through the escrow, a delivery of the deed, a delivery of the cash and of the note and the trust deed securing the balance of the purchase price, and the transaction was fully consummated.

It follows that the finding of the trial court that on November 15 (the date upon which appellants' completed the conditions of the escrow on their part to be performed) no contract existed between the parties, the finding that the respondents cancelled the escrow and the implied finding that the contract of purchase and sale was terminated are wholly unsupported and contrary to the evidence.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied June 27, 1958. Shinn, P. J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied July 30, 1958. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.