[Civ. No. 23220. Second Dist., Div. One. Oct. 27, 1958.]

THE WOOD BUILDING CORPORATION (a Corporation), Respondent, v. WALTER J. GRIFFITTS et al., Appellants.

*Assigned by Chairman of Judicial Council.

Perry & Bush and Frank L. Perry for Appellants.

Darling, Shattuck & Edmonds and Thomas F. Call for Respondent.

FOURT, J.—This is an appeal from a judgment in an action for specific performance. The defendants were directed to execute and deliver a deed to certain real property to the plaintiff and to perform under an agreement made between the parties.

The following is a summary of the facts of the case. In 1956, the defendants, brother and sister, were the owners of certain real property in Redondo Beach, California, which was located between the United States post office building and a building owned by a telephone company. The telephone company desired to have a building constructed on the lot owned by the defendants according to its plans and specifications and to lease the same under a long-term lease agreement. It engaged Harold Von Rolf, a real estate agent, to work out the transaction. The defendants resided upon the property in question. In February or March of 1956, Von Rolf, the real estate agent, called at the Griffitts' home and asked Miss Griffitts whether they were willing to sell their property. He was told to communicate with Mr. Griffitts, who was not at home at that time.

Later Von Rolf called again and talked over the matter with Mr. Griffitts who stated that he would think about it. Von Rolf did not, at that time, tell the defendants that he was working for any particular company or concern. Some 30 days later Von Rolf called the Griffitts and was told by Mr. Griffitts that he and his sister had talked it over and would sell for $25,000 net to themselves. The real estate agent advised Mr. Griffitts that he would let him know whether a sale could be made at that price. The agent asked Mr. Griffitts if they would pay him a commission for the sale of the real estate and Mr. Griffitts replied that they would not pay any such commission.

Von Rolf obtained the plans and specifications from the telephone company for the construction of a proposed building upon the defendants' property, if the same could be purchased, and also secured construction costs for the building

from a contractor. In May or June of 1956, Von Rolf contacted Hugh Darling, the secretary of the plaintiff corporation and told Mr. Darling of the price of defendants' property and the costs for the proposed building. Darling informed Von Rolf that the transaction was satisfactory to him and told Von Rolf to contact William Ehni, the president of the plaintiff corporation and explain the matter to him. The real estate agent did so and Ehni told Von Rolf that the transaction was satisfactory to him. In August of 1956, Darling and Ehni told Von Rolf to consummate the purchase of the defendants' property on behalf of the plaintiff corporation.

On September 12, 1956, Von Rolf telephoned Mr. Griffitts and told him that he was prepared to enter into an escrow and to consummate the sale of the real property. On September 19, 1956, at the Griffitts' suggestion the real estate agent drove defendants to the Bank of America, Redondo Beach branch, to open the escrow. A 30-day escrow was opened and both defendants signed the escrow instructions on that date, as well as a grant deed with the corporation as the grantee, and placed the deed in the escrow. At the time of the signing of the escrow instructions the defendants were told for the first time that the plaintiff was the purchaser of the property. At this time Von Rolf unconditionally deposited a $1,000 check in the escrow on behalf of the plaintiff, for which he received a receipt from the bank. The check was cashed. The escrow instructions contained the following statements by the buyer: "I will hand you or cause to be handed you the sum of $25,000," and immediately below, "and authorize you to accept for my account from Harold Von Rolf the sum of $1,000.00."

Von Rolf had received the $1,000 check from Ehni on September 18, 1956, with instructions to deposit it in the escrow on behalf of the plaintiff. The defendants asked the real estate agent why the selling price was set forth in the escrow at $26,500, instead of $25,000, and further, made inquiries about the real estate agent's fee of $1,500, which was set forth in the escrow instructions. Von Rolf explained that the fee was for services in putting together the entire transaction. The agent had previously secured the approval of Darling and Ehni as to his fee in this particular transaction. On September 20, 1956, the agent mailed to Darling the buyer's instructions. Darling signed the same on September 21, 1956, and on the same day mailed them to Ehni. Ehni signed

the escrow instructions and on September 26, 1956, mailed them to the Bank of America, which received them on September 27, 1956.

On September 24, 1956, Miss Griffitts telephoned Mrs. Tolley, who was in charge of the escrow for the bank, and asked Mrs. Tolley if the defendants could withdraw from the escrow because of Miss Griffitts' health. Mrs. Tolley told Miss Griffitts to set forth the request in writing, and on the same day Miss Griffitts wrote a letter and personally delivered it to the Bank. The letter in question stated in the first paragraph thereof, "I should like to withdraw from my escrow 221-15022 dated September 19, 1956"; then followed several paragraphs concerning her sick leave from her work and her termination on permanent disability, about her doctor's advice, and her inability to sleep and her inability to move because of her ailment, and concluded, "I certainly hope I can withdraw and quit worrying. Had I known it would have affected me this way I would never have considered a move at this time." Mrs. Tolley forwarded a copy of this letter to Ehni's office on September 24, 1956, and Ehni responded to the letter on September 28, 1956, in which he refused for the corporation to consent to Miss Griffitts' request to withdraw from the escrow. Ehni did not see Miss Griffitts' letter of September 24, 1956, until after he had signed and mailed the buyer's escrow instructions to the bank.

On October 17, 1956, Ehni mailed the plaintiff's check for $25,500, and it was received by the bank the next day. On October 16, 1956, the defendants consulted their attorney who prepared a notice of rescission and a letter which was to the effect that the defendants rescinded the agreement upon the grounds that Von Rolf had made certain misrepresentations to the defendants in connection with the contemplated purchase of an apartment house located in Redondo Beach. This was the first time the defendants had set forth with particularity any such a contention.

Von Rolf testified that he and the defendants had first discussed the purchase of the apartment house on September 19, 1956, after the escrow instructions had been signed. The defendants made no independent inquiry regarding the price of the apartment house until after the instructions had been signed by them and after they had consulted an attorney. It was conceded by both defendants that the health of Miss Griffitts was a factor in their wanting to withdraw from the escrow. Miss Griffitts testified that at the time she wrote

the first letter she knew she could not obtain the apartment on the terms purportedly represented to her by the real estate agent, yet she made no reference to that fact in her letter. Another real estate agent testified that about September 19, 1956, Miss Griffitts had indicated she was interested in income property and inquired about properties which the agent had for sale. About one week later she told that same agent that she had changed her mind about buying any income property as she didn't think she would sell her own property.

The Griffitts thereafter refused to close the escrow and an action was filed by the plaintiff in specific performance to compel them to comply with their agreement. The Griffitts answered claiming first that they had cancelled and revoked the instructions prior to the signing of the instructions by the plaintiff, and that the plaintiff had been so advised; secondly that there was no consideration for the signing of the escrow instructions, and thirdly that they had rescinded such instructions upon the grounds that the same had been signed by mistake and because of fraudulent representations. The trial court found against the Griffitts on substantially all of their contentions.

The appellants now contend: (1) that the first letter of Miss Griffitts to the bank constituted a revocation of the escrow agreement; (2) that Miss Griffitts had a right to revoke the contract upon the ground that the plaintiff had not accepted their offer at the time of revocation, and that the contract was not the result of any prior oral agreement with the plaintiff; (3) that the deposit of $1,000 by Von Rolf in the escrow was not the payment of a down payment under the escrow, and (4) that they had a right to rescind, as they did by their letter of October 16, 1956, because of their misunderstanding as to the price of the apartment house in which they had shown some interest as to purchasing.

We believe that there is no merit to any of the contentions of appellants. It is true that there was some testimony which, had it been accepted as true by the trial court, might have sustained some of their assertions; however, there was substantial testimony and evidence adverse to their contentions which the trial court believed and upon which the trial court based its findings, conclusions and judgment.

Considering the contention that appellants could revoke the escrow instructions because no consideration was paid: Von Rolf deposited unconditionally a $1,000 check (which was cashed) on behalf of the plaintiff in connection

with the escrow. A reading of the instructions also convinces us that the $1,000 was deposited and under the circumstances of this case made a binding escrow. The instructions provided that the buyer, "will hand you or cause to be handed you the sum of $25,500.00," and below this it is stated, "and authorize you to accept for my account from Harold Von Rolf the sum of $1,000.00."

The words "will hand you" refer to the $25,500 and not to the $1,000 check. The check was delivered and cashed and the money therefrom stayed with the bank. We believe that under the circumstances this made a sufficient consideration to make the signing of the escrow instructions by the defendants an irrevocable offer. The bank, at the time of the signing of the escrow instructions, was the agent of the defendants and was authorized to receive payment under the instructions. It was said in *Gelber* v. *Cappeller,* 161 Cal.App.2d 113, at page 119 [326 P.2d 521]:

"Under the instructions given by the parties the escrow holder became the common agent of both parties and held all monies and documents deposited with it for the benefit of both until either its powers under their instructions were terminated, or the conditions under which the escrow was to be closed by it had occurred in which latter event it became agent and trustee for the vendors as to the monies and documents deposited by the vendees and agent and trustee for the benefit of the vendees as to the instruments of conveyance of the other documents deposited by the grantor."

As we view it, the vendee made a partial payment, and when accompanied by a writing such as was present in this case, there was then an irrevocable offer for the time set forth in the instruments. (See *Copple* v. *Aigeltinger,* 167 Cal. 706, 709 [140 P. 1073]; *Boehle* v. *Benson,* 150 Cal.App.2d 696, 701 [310 P.2d 650]; *Holland* v. *McCarthy,* 173 Cal. 597, 604 [160 P. 1069]; *Benson* v. *Shotwell,* 87 Cal. 49, 54 [25 P. 249, 681].)

However, as asserted by the respondent, there was evidence to the effect that there was an oral agreement between the plaintiff, as an undisclosed principal, and the defendants with reference to the sale of the property prior to the execution of the instructions. The Griffitts said they would sell their property for $25,000 net to them; the corporation told Von Rolf to go ahead and conclude the purchase at such price; Von Rolf told the Griffitts he was ready to conclude the purchase at the price asked. Arrangements were then

made for the escrow with Von Rolf acting for the corporation.

■ An offer and acceptance may be transmitted by an agent between the offeror and offeree and the authority of such agent need not be in writing. (*Wright* v. *Lowe*, 140 Cal.App. 2d 891, 896-897 [296 P.2d 34]; *King* v. *Stanley*, 32 Cal.2d 584, 588 [197 P.2d 321].)

In *Cowan* v. *Tremble*, 111 Cal.App. 458, at page 462 [296 P. 91], it was said:

"It is well settled as a general rule that an undisclosed principal can either sue or be sued on the contract made by his agent (1 Cal.Jur., Agency, § 131, p. 854; *Parker* v. *Otis*, 130 Cal. 322 [92 Am.St.Rep. 56, 62 P. 571, 927]; *Schader* v. *White*, 173 Cal. 441 [160 P. 557]); and the fact that plaintiff brought the action thereon was a sufficient ratification of the acts of Jacobson (2 C.J., Agency, § 132, p. 513; *Argenti* v. *Brannan*, 5 Cal. 351; *Thompson* v. *Spray*, 72 Cal. 528 [14 P. 182]." (See *Purviance* v. *Shostak*, 90 Cal.App.2d 295, 297 [202 P.2d 755]; 2 Cal.Jur.2d 873 (Agency).)

■ The execution of the escrow instructions constituted a sufficient memorandum of the oral agreement for the sale of the property in that it did give the names of the parties, the price, a description of the property, and was subscribed by the owners or parties to be charged. It was appropriately said in *Boehle* v. *Benson, supra*, 150 Cal.App.2d 696, at page 701:

"We do not agree with appellant's contention that the agreement does not satisfy the statute of frauds. In the case of *Cavanaugh* v. *Casselman*, 88 Cal. 543 [26 P. 515], the court said:

" 'It is not necessary that the plaintiff should himself sign the agreement . . . in order to enable him to enforce it against the defendant. The statute of frauds requires the contract, or some note or memorandum thereof, to be in writing, but it need be subscribed only by the party to be charged [Citation.] . . . The "writing" in question is sufficient to satisfy the statute. It sufficiently names the parties and the price, and gives a complete description of the property. It is also subscribed by the defendant, who is the party to be charged.' " (See also *Steel* v. *Duntley*, 115 Cal.App. 451, 453 [1 P.2d 999]; *Cowan* v. *Tremble, supra*, 111 Cal.App. 458, 462-463; *Williams* v. *Rush*, 134 Cal.App. 554, 558 [25 P.2d 888]; *Gelber* v. *Cappeller, supra*, 161 Cal.App.2d 113; *Tuso* v. *Green*, 194 Cal. 574, 581 [229 P. 327].)

The monies, in addition to the $1,000, deposited by Von

Rolf unconditionally in the escrow were deposited well within the limits provided. (*Bullock* v. *McKeon*, 104 Cal.App. 72, 78 [285 P. 392]; *Shreeves* v. *Pearson*, 194 Cal. 699, 707-708 [230 P. 448]; *Quinn* v. *Dresbach*, 75 Cal. 159, 161 [16 P. 762, 7 Am.Rep. 138]; *Hoskins* v. *Swain*, 61 Cal. 338, 341; *Holland* v. *McCarthy, supra*, 173 Cal. 597, 604.)

As to fraudulent representations made by Von Rolf, the evidence was contradictory. The judge had a right and a duty to determine the truth as it appeared to him, and apparently he believed Von Rolf. A reading of the transcript of the testimony would indicate that if Von Rolf was believed then there was no fraud or misrepresentation in any respect.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.